UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                                          Case No.: 8:12-bk-05428-KRM
                                                                Chapter 11

TREE HOUSE, LLC

            Debtor.

_____/

**DISCLOSURE STATEMENT WITH RESPECT TO PLAN OF
REORGANIZATION UNDER CHAPTER 11 OF THE UNITED STATES
BANKRUPTCY CODE FOR TREE HOUSE, LLC DATED AS OF MAY 3, 2012**

Adam Lawton Alpert, Esq.
BUSH ROSS, P. A.
Post Office Box 3913
Tampa, Florida  33601-3913
(813) 224-9255 (telephone)
(813) 223-9620 (telecopy)
Attorneys for the Debtor

PRELIMINARY STATEMENT

This Disclosure Statement is submitted by Tree House, LLC, a Florida limited liability company (the "Debtor"), pursuant to Section 1125 of the Bankruptcy Code in connection with the Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code for Tree House, LLC Dated as of May 3, 2012 (the "Plan"), proposed by the Debtor in its Reorganization Case under Chapter 11 of the Bankruptcy Code. A copy of the Plan is attached as Exhibit "A" hereto. For purposes hereof, all capitalized terms used in this Disclosure Statement, and not otherwise separately defined herein, shall have the meanings ascribed to such terms in the Plan, as the Plan may be amended, modified or supplemented from time to time. Such meanings shall be equally applicable to both the singular and plural forms of such terms.

This Disclosure Statement has been conditionally approved by the Bankruptcy Court as containing information of a kind, and in sufficient detail, adequate to enable a hypothetical reasonable investor typical of the holders of Claims and Interests in the Classes of Claims and Interests entitled to vote pursuant to the Plan to make an informed judgment whether to accept or reject the Plan. **CONDITIONAL APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT, HOWEVER, CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR MERITS OF THE PLAN.**

**NO STATEMENT OR INFORMATION CONCERNING THE DEBTOR (PARTICULARLY AS TO FUTURE BUSINESS, RESULTS OF OPERATIONS OR FINANCIAL CONDITION, OR WITH RESPECT TO DISTRIBUTIONS TO BE MADE UNDER THE PLAN) OR ITS ASSETS, PROPERTY OR BUSINESS THAT IS GIVEN FOR THE PURPOSE OF SOLICITING ACCEPTANCES OF THE PLAN IS AUTHORIZED, OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. THE STATEMENTS AND INFORMATION ABOUT THE DEBTOR AND THE FINANCIAL INFORMATION OF THE DEBTOR, INCLUDING ALL FINANCIAL PROJECTIONS AND INFORMATION REGARDING CLAIMS OR INTERESTS CONTAINED HEREIN, HAVE BEEN PREPARED FROM DOCUMENTS AND INFORMATION PREPARED BY THE DEBTOR OR PROVIDED TO THE DEBTOR'S PROFESSIONALS BY THE DEBTOR. THE DEBTOR HAS NOT TAKEN ANY INDEPENDENT ACTION TO VERIFY THE ACCURACY OR COMPLETENESS OF SUCH STATEMENTS AND INFORMATION AND EXPRESSLY DISCLAIMS ANY REPRESENTATION CONCERNING THE ACCURACY OR COMPLETENESS THEREOF.**

**THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN, AND NEITHER DELIVERY OF THIS DISCLOSURE STATEMENT NOR ANY EXCHANGE OF RIGHTS MADE IN CONNECTION WITH THE PLAN SHALL, UNDER ANY CIRCUMSTANCES, CREATE AN INFERENCE THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION SET FORTH HEREIN SINCE THE DATE THE DISCLOSURE STATEMENT AND THE MATERIALS RELIED UPON IN PREPARATION OF THE DISCLOSURE STATEMENT WERE COMPILED.**

**THIS DISCLOSURE STATEMENT MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE WHETHER TO VOTE IN FAVOR OF OR AGAINST THE PLAN, AND NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, OR BE DEEMED EVIDENCE OF THE TAX OR OTHER LEGAL CONSEQUENCES OR EFFECTS OF THE REORGANIZATION OF THE DEBTOR. CERTAIN INFORMATION CONTAINED IN THIS DISCLOSURE**

**STATEMENT, BY ITS NATURE, IS A FORECAST OF FUTURE EVENTS AND THEREFORE INCLUDES ESTIMATES, ASSUMPTIONS AND PROJECTIONS WHICH MAY PROVE TO BE WRONG, OR WHICH MAY BE MATERIALLY DIFFERENT FROM ACTUAL FUTURE RESULTS.**

**EACH HOLDER OF A CLAIM OR INTEREST SHOULD CONSULT SUCH HOLDER'S ATTORNEY AND ACCOUNTANT AS TO THE EFFECT OF THE PLAN ON SUCH HOLDER, INCLUDING, BUT NOT LIMITED TO, THE TAX EFFECTS OF THE PLAN.**

**IT IS OF THE UTMOST IMPORTANCE TO THE DEBTOR THAT YOU VOTE PROMPTLY TO ACCEPT THE PLAN BY COMPLETING AND SIGNING THE BALLOT ENCLOSED HEREWITH AND FILING IT WITH THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF FLORIDA, 801 NORTH FLORIDA AVENUE, SUITE 555, TAMPA, FLORIDA 33602.**

<u>OVERVIEW OF THE PLAN</u>

The following is a brief summary of certain information contained elsewhere in this Disclosure Statement and the Plan. The summary is necessarily incomplete and is qualified in its entirety by reference to the more detailed information appearing elsewhere in this Disclosure Statement and the Exhibits hereto, the Plan and the Exhibits thereto, and the Plan Documents.

The Plan is the product of intensive efforts by the Debtor and its professionals to design a plan of reorganization for the Debtor that is fair and equitable to all parties in interest. Consistent with these objectives, the Debtor believes that considering all of the facts and circumstances underlying the Reorganization Case, the Plan provides for the maximum recoveries to, and the expeditious and equitable treatment of, holders of all Claims. **THE DEBTOR RECOMMENDS A VOTE FOR ACCEPTANCE OF THE PLAN.**

The essential elements of the reorganization contemplated by the Plan include, among other things:

      (a)     the payment of Claims in accordance with the requirements of the Bankruptcy Code; and

      (b)     the continuation of the business of the Debtor.

The Plan provides for, among other things, distribution of Cash to satisfy in full Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Priority Claims. The Plan also provides for a distribution of Cash to the holders of Allowed General Unsecured Claims and distributions of Cash and/or promissory notes to the holders of Allowed Secured Claims. Additionally, on the Effective Date, all Interests will be retained unaltered; provided, however, that no distributions will be made to holders of Interests under the Plan until all senior Allowed Claims are satisfied in full pursuant to the treatment of such Claims under the Plan.

**THE DEBTOR BELIEVES THAT IT IS IN THE BEST INTEREST OF ALL PARTIES TO VOTE TO ACCEPT THE PLAN BECAUSE THE PLAN FAIRLY AND EQUITABLY TREATS ALL HOLDERS OF CLAIMS BY PROVIDING THE EARLIEST POSSIBLE AND MAXIMUM RECOVERY TO SUCH HOLDERS.**

## ARTICLE 1

## INTRODUCTION

1.1     Purpose of this Disclosure Statement.  The Debtor submits this Disclosure Statement, pursuant to Section 1125 of the Bankruptcy Code, to all known holders of Claims against, or Interests in, the Debtor, for the purpose of disclosing that information which the Bankruptcy Court has determined is material, important and necessary for holders of Claims and Interests of the Debtor to arrive at a reasonably informed decision in exercising their right to vote for acceptance or rejection of the Plan.

1.2     Explanation of the Reorganization Case.

(a)     Purpose of Chapter 11.  Chapter 11 of the Bankruptcy Code is often called "commercial bankruptcy."  Chapter 11 contemplates the formulation of a plan of reorganization and outlines how a debtor's debts will be paid.  Unlike cases under Chapter 7, 12 or 13 of the Bankruptcy Code, a trustee is not ordinarily appointed in a Chapter 11 case.  Instead, the debtor remains in control of its assets and business affairs as a "debtor in possession" with most of the powers and duties of a trustee. In addition to statutory requirements relating to plan formulation, confirmation and post-confirmation matters, a Chapter 11 case is also shaped by statutory prohibitions against collection efforts or enforcement actions by creditors in order to allow the debtor breathing space within which to reorganize. The Bankruptcy Code contains a number of other significant provisions applicable to Chapter 11 cases, such as those relating to postpetition financing and prepetition executory contracts, which confer powers on the debtor in possession and also provide creditors with certain rights and remedies.

(b)     Formulation of the Plan.  Formulation of a plan of reorganization is the principal purpose of a Chapter 11 case.  A plan of reorganization sets forth the means by which claims against, and interests in, the debtor will be satisfied.  After a plan of reorganization has been filed, it must be accepted by holders of claims against, or interests in, the debtor.  Section 1125 of the Bankruptcy Code requires full disclosure before solicitation of acceptances of a plan of reorganization.  This Disclosure Statement is presented to holders of Claims and Interests to satisfy the disclosure requirements of Section 1125 of the Bankruptcy Code.

1.3     Approval of Disclosure Statement.  By Order of the Bankruptcy Court, this Disclosure Statement was conditionally approved.

1.4     Voting Procedures.

(a)     Persons Entitled to Vote.  Pursuant to the provisions of the Bankruptcy Code, only Classes of Claims and Interests that are impaired[1] under the terms and provisions of the Plan are

---

[1]     Under Section 1124 of the Bankruptcy Code, a class of claims or interests is "impaired" under a plan of reorganization unless, with respect to each claim or interest in such class, the plan in question:
    (1)     leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or
    (2)     notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default—
    (A)     cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code;
    (B)     reinstates the maturity of such claim or interest as such maturity existed before such default;

entitled to vote to accept or reject the Plan.  Furthermore, if a Class of Claims or Interests is not entitled to receive any distribution under the Plan, such Class is deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code.  Holders of Disputed Claims are not entitled to vote on the Plan unless the Bankruptcy Court, upon motion of such holder, temporarily allows the Claim in an amount which it deems proper for purposes of voting to accept or reject the Plan.  Any such motion must be heard and determined by the Bankruptcy Court in accordance with Bankruptcy Rule 3018(a).

   (b) <u>Voting Instructions</u>.

    (1) <u>Ballots</u>.  In voting for or against the Plan, please use only the ballot or ballots sent to you with this Disclosure Statement.  If you have Claims or Interests in more than one Class, you will receive multiple ballots.  **IF YOU RECEIVE MORE THAN ONE BALLOT, YOU SHOULD ASSUME THAT EACH BALLOT IS FOR A SEPARATE CLAIM OR INTEREST AND SHOULD COMPLETE AND RETURN ALL BALLOTS.**

    (2) <u>Returning Ballots</u>.  **YOU SHOULD COMPLETE AND SIGN EACH ENCLOSED BALLOT AND FILE IT WITH THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF FLORIDA, 801 NORTH FLORIDA AVENUE, SUITE 555, TAMPA, FLORIDA 33602, ON OR BEFORE 4:00 P.M., EASTERN PREVAILING TIME, ON _____, 2012.**

   **IN ORDER TO BE COUNTED, BALLOTS MUST BE FILED WITH THE BANKRUPTCY COURT ON OR BEFORE 4:00 P.M., EASTERN PREVAILING TIME, ON _____, 2012.**

   **IT IS OF THE UTMOST IMPORTANCE TO THE DEBTOR THAT YOU VOTE PROMPTLY TO ACCEPT THE PLAN.**

   (c) <u>Incomplete or Irregular Ballots</u>.  Ballots which fail to designate the Class to which they apply shall be counted, subject only to contrary determinations by the Bankruptcy Court, in the Class determined by the Debtor.  **BALLOTS THAT ARE NOT SIGNED AND BALLOTS THAT ARE SIGNED BUT NOT EXPRESSLY VOTED EITHER FOR ACCEPTANCE OR REJECTION OF THE PLAN WILL NOT BE COUNTED.**

 1.5 <u>Confirmation</u>.

   (a) <u>Confirmation Requirements</u>.

   Chapter 11 does not require that each holder of a Claim or Interest vote in favor of the Plan for it to be confirmed by the Bankruptcy Court.  For any Class of "impaired" Claims to accept the Plan, Section 1126(c) of the Bankruptcy Code requires that claimants who hold a majority in number and two-thirds (2/3) in amount of the Allowed Claims in such Class that actually vote on the Plan must vote to accept the Plan.  For a Class of impaired Interests to accept the Plan, Section 1126(d) of the Bankruptcy Code requires that holders of two-thirds (2/3) in amount of the Allowed Interests in such Class that actually vote on the Plan must vote to accept the Plan.

---

   (C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and

   (D) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

Even if all Classes of Claims and Interests accept the Plan, Section 1129 of the Bankruptcy Code requires that the Bankruptcy Court find, among other things, that the Plan is in the best interests of holders of Claims and Interests.  Section 1129 generally requires that the value to be distributed to holders of Claims and Interests may not be less than such parties would receive if the Debtor was to be liquidated under Chapter 7 of the Bankruptcy Code.

(b)     <u>Cramdown</u>.     Pursuant to Section 1129(b) of the Bankruptcy Code, the Bankruptcy Court may confirm the Plan even though less than all of the Classes of Claims and Interests accept it.  Confirmation of the Plan over the objection of one or more impaired Classes of Claims or Interests is generally referred to as a "cramdown."  For the Plan to be confirmed over the objection of an impaired Class of Claims or Interests, the Debtor must show that the Plan does not discriminate unfairly and is fair and equitable with respect to each Class of Claims or Interests that is impaired under, and has not accepted, the Plan.  In order to fulfill this requirement with respect to a Class of Unsecured Claims that has not accepted the Plan, the Debtor must show that (i) the Plan provides that each holder of a Claim of such Class receive or retain on account of such Claim property of a value, as of the Effective Date, equal to the Allowed Amount of such Claim or (ii) the holder of any Claim or Interest that is junior to the Claims of such Class will not receive or retain under the Plan on account of such junior Claim or Interest any property.

(c)     <u>Confirmation Hearing</u>.  The Bankruptcy Court has set a Confirmation Hearing with respect to the Plan on _____, 2012 at __:__ _.m.  Each party in interest will receive, either with this Disclosure Statement or separately, the Bankruptcy Court's notice of the hearing on Confirmation of the Plan.  The Confirmation Hearing may be adjourned, from time to time, by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any adjournment thereof.

(d)     <u>Feasibility of the Plan</u>.  The terms proposed by the Debtor for the treatment of Allowed Claims and Allowed Interests under the Plan are based upon, among other things, the assessment by the Debtor of the relative priority afforded to various Claims and Interests under the Bankruptcy Code and the Debtor's ability to repay each of the obligations consistent with the capital requirements of Reorganized Debtor's business.  **WHILE THERE CAN BE NO ASSURANCE THAT THE PLAN, IF CONFIRMED, WILL BE SUCCESSFUL, THE DEBTOR BELIEVES THAT REORGANIZATION UNDER THE PLAN DOES PROVIDE FOR THE GREATEST AND EARLIEST RECOVERIES FOR ALL HOLDERS OF CLAIMS AND INTERESTS.**

(e)     <u>Effect of Confirmation</u>.  Confirmation makes the Plan binding upon the Debtor, all holders of Claims and Interests and other parties in interest, regardless of whether or not it has been accepted by them.

1.6     <u>Procedure for Filing Proofs of Claim and Proofs of Interest</u>.

(a)     <u>Bar Dates</u>.

(1)     <u>General Bar Date for Claims</u>.  All Proofs of Claim must have been filed by June 25, 2012 (the "General Claims Bar Date").  **IF A CLAIM WAS LISTED IN THE SCHEDULES AS NON-CONTINGENT, LIQUIDATED AND UNDISPUTED, A PROOF OF CLAIM NEED NOT HAVE BEEN FILED.**  Both the Schedules and the docket listing Proofs of Claim that were filed on or before the General Claims Bar Date are on file at the Bankruptcy Court and are open for inspection during regular Bankruptcy Court hours.

(2)    Administrative Claims Bar Date.    Unless otherwise ordered by the Bankruptcy Court, the order conditionally approving this Disclosure Statement established a bar date for Administrative Claims.  Holders of Administrative Claims may file a Request for Payment of Administrative Expense on or before such bar date.  Unless otherwise ordered by the Bankruptcy Court, the Reorganized Debtor and any other party in interest will have sixty (60) days after the Administrative Claims bar date to review and object to such Administrative Claims before a hearing for determination of such Claims is held by the Bankruptcy Court.

(b)    Executory Contracts and Unexpired Leases.    Parties to executory contracts or unexpired leases that are rejected by the Debtor under the Plan must file any Claims for damages resulting from such rejection within thirty (30) calendar days after the Confirmation Date.  Parties to executory contracts or unexpired leases that were or may be rejected by the Debtor by motion or otherwise before Confirmation must file Proofs of Claim for any rejection damages in accordance with the Bankruptcy Court's Order with respect to such rejection.

# ARTICLE 2

## THE REORGANIZATION CASE

2.1    History of the Debtor and Factors Precipitating the Reorganization Case.  Prior to the commencement of this bankruptcy case, the Debtor had fallen behind on assessments made by the Grenelefe Association of Condominium Owners No. 1, Inc. (the "**Association**").  On November 23, 2009, the Association commenced a state court action by filing a complaint in the Tenth Judicial Circuit Court in and for Polk County, Florida against the Debtor seeking to recover past-due assessments.  On August 15, 2011, the Association and the Debtor entered into a mediated settlement agreement pursuant to which the Debtor agreed to pay the past-due assessments in monthly installments commencing on October 1, 2011 and to pay all future quarterly assessments as they come due.  On December 2, 2011, the Association asserted that a default occurred under the settlement agreement for failure to make a payment due under the settlement agreement.  Based upon the asserted default, on January 18, 2012, the Association filed a motion for final judgment of foreclosure against the Debtor.  After a March 7, 2012 hearing on the Association's motion, the state court entered a Final Judgment of Foreclosure with respect to the Units owned by the Debtor and a foreclosure sale was scheduled for April 12, 2012.

2.2    Significant Events in the Reorganization Case.

(a)    General.  On April 10, 2012 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtor has operated its business and managed its assets as debtor in possession under Sections 1107 and 1108 of the Bankruptcy Code.

(b)    Approval of the Debtor's Use of Cash Collateral.  On April 10, 2012, the Debtor filed an Emergency Motion for Interim and Final Authority to Use Cash Collateral (Doc. No. 8) (the "Cash Collateral Motion").  Prior to and subsequent to the filing of the Cash Collateral Motion, the Debtor negotiated with CNL Bank, who consented to the Debtor's continued operation of its business using the bank's cash collateral.  On April 12, 2012, the Bankruptcy Court orally approved the Cash Collateral Motion on an interim basis and such ruling was memorialized in the Court's written order entered on April 24, 2012.  (Doc. No. 36.)  At this time, the Court has approved the Debtor's use of cash collateral continuing through May 17, 2012.

(c)    Motion to Value Collateral and Determine Secured Status of Grenelefe Association of Condominium Owners No. 1, Inc.. On April 11, 2012, the Debtor filed a Motion to Value Collateral and Determine Secured Status of Grenelefe Association of Condominium Owners No. 1, Inc. (Doc. No. 16) seeking to value the Units and establish that the Association's claim against the Debtor is wholly unsecured as a result of the value of the Units being less than the amount owed to CNL Bank who holds a first priority mortgage on the Units that is senior to any interest in the Units asserted by the Association.  No determination has been made by the Court at this time on this motion.

## ARTICLE 3

### CLASSIFICATION OF CLAIMS AND INTERESTS

3.1    Classification.

(a)    General.  Pursuant to Section 1122 of the Bankruptcy Code, Section 3.2 herein sets forth a designation of Classes of Claims and Interests.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of the Class and is classified in a different Class to the extent the Claim or Interest qualifies within the description of that different Class.

(b)    Unclassified Claims.  In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified and are excluded from the Classes established in Section 3.2 herein.  The treatment accorded Administrative Expense Claims and Priority Tax Claims is set forth in Article 2 of the Plan.

3.2    Classes.  For the purposes of the Plan, the Claims against, or Interests in, the Debtor are grouped in the following Classes in accordance with Section 1122(a) of the Bankruptcy Code:

(a)    Class 1 - Priority Claims.  Class 1 consists of all Priority Claims.

(b)    Class 2 - Secured Claims of the Polk County Tax Collector and Tax Certificate Holders.  Class 2 consists of the Secured Claims of the Polk County Tax Collector and tax certificate holders.

(c)    Class 3 - CNL Bank Secured Claim. Class 2 consists of the Secured Claim of CNL Bank.

(d)    Class 4 - Unsecured Claims.  Class 4 consists of all General Unsecured Claims.

(e)    Class 5 - Interests in the Debtor.  Class 5 consists of all Interests in the Debtor.

## ARTICLE 4

### IDENTIFICATION OF CLAIMS AND INTERESTS
### IMPAIRED AND NOT IMPAIRED BY THE PLAN

4.1    Classes of Claims Not Impaired by the Plan.  Class 1 is Unimpaired by the Plan.  Under Section 1126(f) of the Bankruptcy Code, the Holders of those Claims are presumed conclusively to have voted to accept the Plan and, therefore, the votes of those Holders shall not be solicited.

4.2     Classes of Claims and Interests Impaired by the Plan.  Classes 2 through 5 are Impaired by the Plan.  The Holders of Claims and Interests in Classes 2 through 5 are entitled to vote to accept or reject the Plan.

## ARTICLE 5

## TREATMENT OF ALLOWED CLAIMS AND ALLOWED INTERESTS

The Allowed Claims and Allowed Interests, as classified in Article 3 herein, shall be satisfied in the manner set forth in this Article 5.  The treatment of, and the consideration to be received by, Holders of Allowed Claims and Holders of Allowed Interests pursuant to the Plan shall be in full and final satisfaction, settlement, release, extinguishment and discharge of their respective Allowed Claims and Allowed Interests (of any nature whatsoever).

5.1     Claims and Interests.  The following constitutes the treatment under the Plan of the Allowed Claims and Allowed Interests:

(a)     Class 1 - Priority Claims.  Class 1 consists of all Priority Claims.  Each Holder of an Allowed Priority Claim shall receive (1) the Allowed Amount of such Holder's Allowed Priority Claim, in Cash, on the Distribution Date, in accordance with Section 1129(a)(9)(B) of the Bankruptcy Code, (2) such other treatment as may be agreed to in writing by such Holder and the Debtor, or (3) payment as otherwise ordered by a Final Order of the Bankruptcy Court.  Notwithstanding the foregoing, for all Priority Claims for security deposits held by the Debtor under any unexpired leases of Units assumed by the Reorganized Debtor either by Final Order or under Section 8.1(b) of the Plan, such security deposits shall be retained by the Reorganized Debtor and are subject to the terms of the respective unexpired leases.

(b)     Class 2 - Secured Claims of the Polk County Tax Collector and Tax Certificate Holders.  Class 2 consists of the Secured Claims of the Polk County Tax Collector and tax certificate holders.  The Polk County Tax Collector and any Holders of issued tax certificates for ad valorem taxes (except to the extent that such Holder agrees to different treatment) shall receive the Allowed Amount of its Secured Claim (a) in Cash, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, on the Distribution Date, or (b) in regular Cash installment payments beginning on April 10, 2013 and continuing annually through April 10, 2017 equal to the Allowed Amount of such Claim together with accrued interest at the applicable interest rate under non-bankruptcy law.  Any Holder of a tax certificate shall be prohibited from applying for the issuance of a tax deed during the term of the Plan as long as the Debtor is not in default.  To the extent that any Class 2 Claim is secured by a valid, perfected and enforceable Lien, such Claim shall be collateralized by a continuation of such Lien and such Claim shall be and become due and payable upon the sale or other disposition of the collateral therefor.

(c)     Class 3 - Secured Claim of CNL Bank.  Class 3 consists of the Secured Claim of CNL Bank.  On the Effective Date, the Holder of the Allowed Class 3 Secured Claim shall either (1) receive such other treatment as the Debtor and the Holder of such Claim shall agree upon in writing; or (2) (i) retain the Liens securing its Allowed Claim, and (ii) receive a promissory note from the Reorganized Debtor with the following terms:

| | |
|---|---|
| Principal Amount: | CNL Bank shall have an Allowed Class 3 Secured Claim of $800,000.00. |

| | |
|---|---|
| Interest Rate: | Five percent (5%) per annum. |
| Monthly Payment Terms: | Amortized monthly payments of principal and accrued interest based upon a 25-year term beginning May 31, 2012 and continuing through April 30, 2017. |
| Balloon Payment Terms: | A balloon payment of the outstanding remaining principal and accrued interest is due in full as of May 31, 2017. |
| Collateral: | CNL Bank shall retain its Liens against the collateral securing its Allowed Secured Class 3 Claim to the same extent, validity and priority that such Claim had prior to the Petition Date. |

(d)     Class 4 - General Unsecured Claims.  Class 4 consists of the General Unsecured Claims not otherwise classified in Classes 1, 2 and 3 above.  On March 31 of each calendar year from 2013 through 2017, the Disbursing Agent shall disburse to each Holder of an Allowed Unsecured Claim a distribution in Cash in the amount of their Pro Rata Share of the amount in the Unsecured Creditors' Fund.

(e)     Class 5 - Interests.  Class 5 consists of all Interests.  On the Effective Date, all existing Interests shall be extinguished.  On the Effective Date, new membership Interests in the same amount as were issued and authorized prepetition shall be issued to Feltrim Development NA, Inc. in exchange for its agreement to fund any post-confirmation operating shortfalls and funds required for payments under the Plan; provided, however, that Feltrim Development NA, Inc. shall not be entitled to any distribution from the Reorganized Debtor on account of such Interests until and unless each Holder of an Allowed Claim in Classes 1 through 4 is satisfied in full as provided under this Plan.

## ARTICLE 6

## TREATMENT OF ADMINISTRATIVE CLAIMS
## AND PRIORITY TAX CLAIMS

6.1     Administrative Expense Claims.  Each Holder of an Allowed Administrative Expense Claim (except any such Holder that agrees to different treatment) shall receive the Allowed Amount of such Holder's Allowed Administrative Expense Claim, without interest, in Cash, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, on the Distribution Date, or such other treatment as may be agreed upon by the Holder of such Allowed Administrative Claim and the Debtor; provided, however, that Allowed Administrative Expense Claims representing (a) postpetition liabilities incurred in the ordinary course of business by the Debtor and (b) postpetition contractual liabilities arising under loans or advances to the Debtor, whether or not incurred in the ordinary course of business, shall be paid by the Reorganized Debtor in accordance with the terms and conditions of the particular transactions relating to such liabilities and any agreements relating thereto.

All fees and charges assessed against the Estate under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930, through the Effective Date shall be paid to the United States Trustee no later than thirty (30) days following the Effective Date. At the time of such payment, the Debtor shall also provide to the United States Trustee an appropriate report indicating the disbursements for the relevant periods. Following the Effective Date, the Debtor shall be responsible for any such fees required pursuant to 28 U.S.C. §1930(a)(6) for disbursements made by the Debtor. All such payments to the United States

Trustee shall be in the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) based upon the applicable disbursements for the relevant post-confirmation periods and shall be made within the time period set forth in 28 U.S.C. §1930(a)(6), until the earlier of (i) the closing of the Reorganization Case by the issuance of a Final Order by the Bankruptcy Court or the Final Decree Date, or (ii) the entry of an order by the Bankruptcy Court dismissing the Reorganization Case or converting the Reorganization Case to another chapter under the Bankruptcy Code.

6.2     Priority Tax Claims.  Each Holder of an Allowed Priority Tax Claim (except any such Holder that agrees to different treatment) shall receive the Allowed Amount of such Holder's Allowed Priority Tax Claim, without post-petition interest or penalty, (a) in Cash, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, on the Distribution Date, or (b) in regular Cash installment payments over a period not exceeding five years from the Petition Date of a total value, as of the Effective Date, equal to the Allowed Amount of such Claim.  The obligations under this Section 2.2 in respect of any Allowed Priority Tax Claim that is secured by a valid, perfected and enforceable Lien shall be collateralized by a continuation of the Lien underlying such Claim and such obligation shall be and become due and payable upon the sale or other disposition of the collateral therefor.

## ARTICLE 7

### MEANS FOR EXECUTION OF PLAN

7.1     Plan Funding.  The Debtor will fund the Plan from the Available Cash and the income from the Reorganized Debtor's rental of the Units. Any operating shortfalls or funds required for payments under the Plan, including the Unsecured Creditors' Fund, will be funded by Feltrim Development NA, Inc.  The Debtor anticipates that such funds will be sufficient to pay all remaining Allowed Administrative Claims, Statutory Fees, Priority Tax Claims, and Priority Claims on the Effective Date and thereafter when payments are required to be made under the Plan when such Claims become Allowed Claims.

7.2     Management of the Reorganized Debtor.  On and after the Effective Date the business and affairs of the Reorganized Debtor shall be managed by the same managers that existed on the Petition Date. The Reorganized Debtor shall have full control and authority over the Property of the Estate of the Debtor, without the need for Bankruptcy Court approval pursuant to section 363 or 330 of the Bankruptcy Code, or any other provision of the Bankruptcy Code, or United States trustee control or oversight during a Chapter 11 case, including but not limited to policy making, day-to-day operations, financing, transactional, corporate governance, and any and all other corporate activity.

## ARTICLE 8

### EFFECTS OF PLAN CONFIRMATION

8.1     Discharge.  Pursuant to section 1141(d) of the Bankruptcy Code, Confirmation of the Plan discharges the Debtor from (1) all Claims (including, but not limited to, claims based upon any act or omission, transaction or other activity or security instrument or other agreement of any kind or nature occurring, arising or existing prior to entry of the Confirmation Order or arising from any pre-Confirmation conduct, act or omission of the Debtor) against, liabilities of (including, but not limited to, any liability of a kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code), Liens on, obligations of, and Interests in the Debtor or the assets and properties of the Debtor, whether known to, unknown or knowable by the Holder thereof and (2) all causes of action, whether known to, unknown or knowable by the Holder thereof, either directly or derivatively through the Debtor, against successors and assigns of the Debtor, based on the same subject matter as any Claim or Interest, in each case regardless

of whether or not a Proof of Claim or Proof of Interest was filed, whether or not Allowed and whether or not the Holder of the Claim or Interest voted on or accepted the Plan.  Except for the obligations expressly imposed by the Plan, the distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, extinguishment and termination of all such Claims against, liabilities of, Liens on, obligations of and Interests in the Debtor or the assets and properties of the Debtor.  In addition, the Confirmation Order shall operate as a general adjudication and resolution with prejudice, as of the Effective Date, of all pending legal proceedings against the Debtor and its assets and properties, as well as any proceedings not yet instituted against the Debtor or its assets and properties, except as otherwise provided in the Plan.

As provided in section 524 of the Bankruptcy Code, the discharge provided herein operates as an injunction against, among other things, the assertion of any Claim or Interest or the commencement of legal action or process against the Debtor or against the property of the Debtor.

Furthermore, but in no way limiting the generality of the foregoing discharge and injunction, except for the obligations expressly imposed by the Plan, any Person or Governmental Unit accepting any distribution pursuant to the Plan shall be presumed conclusively to have released the Debtor and successors and assigns of the Debtor, from any cause of action based on the same subject matter as the Claim or Interest on which the distribution is received.  This release shall be enforceable as a matter of contract against any Person or Governmental Unit that acquires any distribution pursuant to the Plan.

8.2     General Injunction.  Pursuant to Sections 105, 1123, 1129 and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the Plan, as of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons or Entities that have held, currently hold or may hold a Claim, Debt, Liability or Interest that is discharged or terminated pursuant to the terms of the Plan are and shall be permanently enjoined and forever barred from taking any of the following actions on account of any such discharged or terminated Claims, Debts, Liabilities, or Interests, other than actions brought to enforce any rights or obligations under the Plan or the Plan Documents: (a) commencing or continuing in any manner any action or other proceeding against the Debtor and its Property; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor and its Property; (c) creating, perfecting or enforcing any Lien or encumbrance against the Debtor, and its Property; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order; or (f) interfering with or in any manner whatsoever disturbing the rights and remedies of the Debtor. The Debtor shall have the right to independently seek enforcement of this general injunction provision. This general injunction provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions of this Article shall not release or be deemed a release of any of the Causes of Action.

8.3     Term of Injunctions and the Automatic Stay.  Unless otherwise provided in the Plan or a Final Order of the Bankruptcy Court, the injunctions described in Sections 8.1 and 8.2 herein shall remain in full force and effect following the Effective Date.  All other injunctions or automatic stays provided for in the Reorganization Case pursuant to Section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

8.4     No Liability for Tax Claims.  Unless a taxing authority has asserted a Claim against the Debtor before the bar date established therefor, no Claim of such authority shall be Allowed against the Debtor or Reorganized Debtor for taxes, penalties or interest arising out of the failure, if any, of the

Debtor to have filed any tax return, including, but not limited to, any income tax return or franchise tax return in any prior year or arising out of an audit of any return for a period before the Petition Date.

8.5    Vesting.  Except as otherwise expressly provided in the Plan, on the Effective Date, the Reorganized Debtor shall be vested with all of the Assets and property of the Debtor, free and clear of all Claims, Liens, encumbrances, charges and other interests of Holders of Claims or Interests, and shall operate its business free of any restrictions imposed by the Bankruptcy Code or by the Bankruptcy Court.

8.6    Disallowed Claims and Disallowed Interests.  On and after the Effective Date, the Debtor shall be fully and finally discharged of any liability or obligation on a disallowed Claim or a disallowed Interest, and any Order creating a disallowed Claim or a disallowed Interest which is not a Final Order as of the Effective Date solely because of a Person's or Governmental Unit's right to move for reconsideration of such Order pursuant to Section 502 of the Bankruptcy Code or Bankruptcy Rule 3008 shall nevertheless become and be deemed a Final Order on the Effective Date.  The Confirmation Order, except as otherwise provided herein, shall constitute an Order: (a) disallowing all Claims and Interests to the extent such Claims and Interests are not allowable under any provision of Section 502 of the Bankruptcy Code, including, but not limited to, time-barred Claims and Interests, and Claims for unmatured interest; and (b) disallowing or subordinating, as the case may be, any Claims for penalties or punitive damages.

8.7    No Successor Liability.  Except as otherwise expressly provided in the Plan, the Reorganized Debtor does not, pursuant to the Plan or otherwise, assume, agree to perform, pay or indemnify creditors against or otherwise have any responsibilities for, any liabilities or obligations of the Debtor or its Affiliates, whether fixed, contingent or otherwise, known or unknown, relating to or arising out of the operations of or assets of the Debtor, whether arising prior to, on or after the Effective Date. The Reorganized Debtor is not, nor shall it be, a successor to the Debtor or its Affiliates by reason of any theory of law or equity, and they shall not have any successor or transferee liability of any kind or character, except that the Reorganized Debtor shall assume the obligations specified in the Plan and the Confirmation Order.

## ARTICLE 9

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

9.1    Assumption and Rejection of Executory Contracts and Unexpired Leases.

(a)    Rejection.  Any executory contracts or unexpired leases that (a) have not been assumed by the Debtor with the Bankruptcy Court's approval on or prior to the Confirmation Date, and (b) are not the subject of a pending motion to assume on the Confirmation Date, shall, as of the Confirmation Date (subject to the occurrence of the Effective Date), be deemed to have been rejected by the Debtor.  The Plan shall constitute a motion to reject such executory contracts and unexpired leases, and the Debtor shall have no liability thereunder except  as is specifically provided in the Plan. Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to the Plan.

(b)    Assumption.  Notwithstanding anything in Section 9.1(a) to the contrary, the Debtor will assume the executory contracts identified on Exhibit "B" hereto with the cure amounts set forth thereon paid in accordance with Section 9.2 below.  In addition, the Debtor may seek to assume certain executory contracts and unexpired leases that will be identified in any motion to assume pending on the Confirmation Date.

(c)    Reservation.  Notwithstanding anything in Sections 9.1(a) and 9.1(b) to the contrary, this Section 9.1 shall not apply to any executory contract or unexpired lease that is treated otherwise under the Plan.

9.2    Cure.  At the election of the Debtor, any monetary defaults under any executory contract and unexpired lease to be assumed shall be satisfied pursuant to Section 365(b)(1) of the Bankruptcy Code, in one of the following ways:  (a) by payment of the default amount in Cash on the Effective Date; (b) by payment of the default amount in equal monthly installments commencing on July 1, 2012 and continuing for six months without interest, prepayable at any time with no penalty or premium; or (c) on such other terms as agreed to by the parties to such executory contract or unexpired lease.  Any party to an executory contract that does file an objection to the Plan prior to the deadline for filing objections to the Plan established by order of the Bankruptcy Court shall be deemed to agree to the cure amount for such executory contract as reflected on Exhibit "B" to the Disclosure Statement.  In the event of a dispute regarding (i) the cure amount for any executory contract to be assumed under the Plan, (ii) the ability of the Debtor to provide adequate assurance of future performance under the contract or lease to be assumed, or (iii) any other matter pertaining to assumption, the cure payments required by Section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving assumption.

9.3    Claims under Rejected Executory Contracts and Unexpired Leases.  The Bankruptcy Court shall determine the dollar amount, if any, of the Claim of any Person or Governmental Unit seeking damages by reason of the rejection of any executory contract or unexpired lease; provided, however, that such Person or Governmental Unit files a Proof of Claim with the Bankruptcy Court before thirty (30) calendar days following the Confirmation Date.  To the extent any such Claim is Allowed by the Bankruptcy Court by Final Order, such Claim shall become, and shall be treated for all purposes under the Plan as, an Allowed Unsecured Claim and the holder thereof shall receive distributions as a holder of an Allowed Claim in such Class or Classes pursuant to the Plan.  The Plan shall constitute notice to Persons and Governmental Units that may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the bar date for filing a Proof of Claim in connection therewith; provided, however, that the Debtor shall have no obligation to notify such Persons and Governmental Units that the Confirmation Date has occurred.

9.4    Assumption of the Debtor's Corporate Indemnities.  Any obligations of the Debtor, pursuant to its corporate charter and bylaws, to indemnify its directors, managers, officers, agents, employees, attorneys and representatives, with respect to all present and future actions, suits and proceedings against the Debtor or any of such officers, managers, directors, agents, employees, attorneys or representatives, based upon any act or omission related to service with, or for or on behalf of, the Debtor shall not be discharged or impaired by Confirmation of the Plan, but shall be deemed and treated as executory contracts that are assumed by the Debtor pursuant to the Plan and Section 365 of the Bankruptcy Code.  Accordingly, such indemnification obligations shall survive unaffected by the reorganization contemplated by the Plan and shall be performed and honored by Reorganized Debtor regardless of the Confirmation of the Plan.

## ARTICLE 10

## ESTIMATED CLAIMS AND ESTIMATED RECOVERIES BY CLASS

10.1    General.  The Debtor has analyzed the Proofs of Claim filed in the Reorganization Case, as well as the Claims scheduled by the Debtor for which no Proofs of Claim were filed.  The estimated Allowed Claims and estimated recoveries in the Reorganization Case are summarized below.  Certain estimated Allowed Claims and estimated recoveries set forth below represent the best estimates of the

Debtor and its professionals based upon the information available to them. **THE DEBTOR AND ITS PROFESSIONALS HAVE EXPENDED CONSIDERABLE TIME AND EFFORT TO ENSURE THE ACCURACY OF THE ESTIMATED INFORMATION SET FORTH BELOW; HOWEVER, NO REPRESENTATION CAN BE MADE THAT SUCH INFORMATION IS WITHOUT INACCURACY. THE INFORMATION SET FORTH BELOW IS SUBJECT TO THE UNCERTAINTIES OF LITIGATION WITH RESPECT TO MANY CLAIMS AND INTERESTS AND OTHER FACTORS WHICH MAY OR MAY NOT BE RESOLVED IN THE DEBTOR'S FAVOR. THEREFORE, NO ASSURANCE CAN BE GIVEN THAT THE ESTIMATED ALLOWED CLAIMS AND INTERESTS ARE EXACT OR THAT THE ESTIMATED RECOVERIES WILL BE ACHIEVED.**

10.2 <u>Estimated Claims and Estimated Recoveries</u>. The Debtor estimates that the Allowed Claims against the Debtor and the corresponding estimated recoveries under the Plan are as follows:

| Category or Class of Claims or Interests | Est. Total No. of Allowed Claims | Est. Total Amount of Allowed Claims | Estimated Recovery |
|---|---|---|---|
| Administrative Claims | 2 | $35,000.00 | 100% |
| Secured Claims | 18 | $830,000.00 | 100% |
| Unsecured Claims | 11 | $598,288.29 | 3.34% |

## ARTICLE 11

### SELECTED FINANCIAL INFORMATION

11.1 <u>Selected Financial Information</u>. Attached hereto is certain projected information regarding the Debtor's projected income and expenses after confirmation of the Plan. In addition, selected financial information regarding the Debtor is contained in the Schedules, Statement of Financial Affairs and Monthly Operating Reports that have been filed in the Bankruptcy Court and are available upon request.

11.2 <u>Reorganized Debtor Financial Projections</u>. The Debtor has prepared certain financial projections for the Reorganized Debtor, a summary of which is attached hereto as Exhibit D (the "Financial Projections"). Variances in the forecasted financial information contained therein may result from unforeseen factors. However, the Financial Projections represent the Debtor's present judgment of the projected business operations of the Reorganized Debtor.

**WHILE THE DEBTOR BELIEVES THAT THE FINANCIAL PROJECTIONS ARE REASONABLE IN LIGHT OF CURRENT FACTS AND CIRCUMSTANCES KNOWN TO THE DEBTOR'S MANAGEMENT, THE FINANCIAL PROJECTIONS ARE BASED ON A NUMBER OF ASSUMPTIONS AND ARE SUBJECT TO SIGNIFICANT UNCERTAINTIES WHICH ARE BEYOND THE CONTROL OF THE REORGANIZED DEBTOR. THEREFORE, THERE CAN BE NO ASSURANCE THAT THESE FINANCIAL PROJECTIONS WILL BE REALIZED AND ACTUAL OPERATING RESULTS MAY BE MATERIALLY HIGHER OR LOWER THAN FORECAST.**

## ARTICLE 12

## RISK FACTORS OF THE PLAN

12.1     General.  The following is intended as a summary of certain risks associated with the Plan, but is not exhaustive and must be supplemented by the analysis and evaluation of the Plan and this Disclosure Statement as a whole by each holder of a Claim or Interest with such holder's own advisors.

12.2     Confirmation Risks.  For the Plan to be confirmed, each impaired Class of Claims and Interests is given the opportunity to vote to accept or reject the Plan, except, however, for those Classes which will not receive any distribution under the Plan and which are, therefore, considered to have rejected the Plan.  With regard to the impaired Classes which vote on the Plan, the Plan will be deemed accepted by a Class of impaired Claims if the Plan is accepted by holders of Claims of such Class actually voting on the Plan who hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the total Allowed Claims of such Class.  The Plan will be deemed accepted by a Class of impaired Interests if it is accepted by the members actually voting on the Plan who hold at least two-thirds (2/3) in amount of the total Allowed Interests voted.  Only those members of a Class who vote to accept or reject the Plan will be counted for voting purposes.

If any impaired Class of Claims or Interests does not accept the Plan, pursuant to Section 1129(b) of the Bankruptcy Code, the Bankruptcy Court may still confirm the Plan at the request of the Debtor if, among other things, as to each impaired Class which has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable."  The Debtor believes that the Plan affords fair and equitable treatment for all Allowed Claims and Interests.  If one or more of the impaired Classes of Claims or Interests votes to reject the Plan, the Debtor may request that the Bankruptcy Court confirm the Plan by application of the "cramdown" procedures available under Section 1129(b) of the Bankruptcy Code.  However, there can be no assurance that the Debtor will be able to use the cramdown provisions of the Bankruptcy Code for Confirmation of the Plan.  Any modification of the Plan necessary to effect a cramdown may result in a different treatment of Claims and Interests than those currently afforded in the Plan, which, as to any Claim or Interest, may be less favorable, and distributions to holders of Claims and Interests may be delayed.

Any objection to the Plan by a member of a Class of Claims or Interests could either prevent Confirmation of the Plan or delay such Confirmation for a significant period of time.

If certain holders of Claims or Interests (a) contest the Allowed Amount of their Claims or Interests under the Plan and successfully contend that such amount should be higher than the amount reflected on the Schedules or (b) successfully contend that the Claims or Interests of such holders of Claims or Interests should be included in a different Class under the Plan, the Bankruptcy Court may deem the Plan not feasible, and may deny Confirmation of the Plan.

12.3     Reorganized Debtor Financing.  The Financial Projections are dependent upon the assumption that the Reorganized Debtor can obtain adequate financing to payoff CNL Bank on or before May 31, 2017 and will not be subject to significant adverse economic events.  The availability of such financing is dependent on the overall condition of credit markets, the willingness of individual financial institutions to provide financing and alternative lending options.  There can be no assurance that the Reorganized Debtor will be able to obtain sufficient financing or that lenders will be agreeable to refinance any indebtedness.

At the Confirmation Hearing, the Bankruptcy Court must make a determination, among other things, that all of the proposed financing in connection with the implementation of the Plan is feasible.

- 16 -

The Debtor believes that the Reorganized Debtor will possess the financial ability to obtain financing to refinance the debt owed to CNL Bank as contemplated by the Plan.  There can be no assurance that the Reorganized Debtor will be able to obtain sufficient financing to satisfy the interest and principal due to CNL Bank debt.  However, the Reorganized Debtor will take all necessary steps to obtain the financing required to meet the obligations under the Plan.

12.4    Risk of Post-Confirmation Default.  Although no guarantees can be given, the Debtor believes that sufficient operating cash flow will be generated from continued rental of the Units and cash infusions by Feltrim Development NA, Inc. in order to meet its operating requirements.  At the Confirmation Hearing, the Bankruptcy Court will be required to make a judicial determination that the Plan is feasible.  However, the risk of a post-Confirmation default nevertheless exists.

## ARTICLE 13

## CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

13.1    General.  Certain tax consequences of the Plan to the Debtor and to Holders of Claims and Interests are discussed below.  This discussion of the income tax consequences of the Plan under U.S. federal income tax law, including the Internal Revenue Code of 1986, as amended (the "IRC"), is provided for informational purposes only and is not intended to be, nor should it be, construed to be, legal or tax advice to any particular Holder.  While this discussion addresses certain of the material tax consequences of the Plan, it is not a complete discussion of the all such consequences and is subject to substantial uncertainties.  Moreover, the consequences to a Holder of Claims and Interests may be affected by matters not discussed below (including, without limitation, special rules applicable to certain types of taxpayers holding non-vested stock or otherwise subject to special rules, nonresident aliens, life insurance companies, and tax-exempt organizations) and by such Holders' particular tax situations.  In addition, this discussion does not address any state, local, or foreign tax considerations that may be applicable to particular Holders.

THE DEBTOR'S GENERAL BANKRUPTCY COUNSEL HAVE NO TAX EXPERTISE AND HAVE NOT RESEARCHED OR ANALYZED TAX CONSEQUENCES RESULTING FROM THE PLAN.  HOLDERS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES.

13.2    Certain U.S. Federal Income Tax Consequences to Holders of Claims and Interests.

(f)    Consequences to Holders of Secured Claims. The following discussion assumes that each Holder of an Allowed Secured Claim holds such Claim as a "capital asset" within the meaning of Section 1221 of the IRC.  If an Allowed Secured Claim remains secured by a Lien on the Debtor's Assets, the Holder of such Claim should not recognize a gain or loss except to the extent Collateral securing such Claim is changed, and the change in Collateral constitutes a "significant modification" of the Allowed Secured Claim within the meaning of Treasury Regulations promulgated under Section 1001 of the IRC. If an Allowed Secured Claim is paid in full in Cash, the Holder should recognize a capital gain or loss (which capital gain or loss would be a long-term capital gain or loss to the extent that the Holder has held the debt instrument underlying its Claim for more than one year) in an amount equal to the amount of Cash received over the Holder's adjusted basis in the debt instrument(s) underlying its Allowed Secured Claim. To the extent that a portion of the Cash received represents accrued but unpaid interest that the Holder has not already taken into income, the Holder may recognize ordinary interest income.

        (g)      Consequences to Holders of Priority Claims.  To the extent that the Holder of an Allowed Priority Claim receives a Distribution under the Plan, such Holder should recognize such Distribution as ordinary income and submit the appropriate withholdings based on that Holder's particular circumstances. The Disbursing Agent shall make any appropriate withholdings from such Distributions.

        (h)      Consequences to Holders of Unsecured Claims.  To the extent the Holder of an Allowed General Unsecured Claim receives less than full payment on account of such Claim, the Holder of such Claim may be entitled to assert a bad debt deduction or worthless security deduction with respect to such Allowed Unsecured Claim.

        To the extent that any amount received by a Holder of an Allowed Unsecured Claim under the Plan is attributable to accrued but unpaid interest and such amount has not previously been included in the Holder's gross income, such amount should be taxable to the Holder as ordinary interest income. Conversely, a Holder of an Allowed Unsecured Claim may be able to recognize a deductible loss (or, possibly, a write-off against a reserve for worthless debts) to the extent that any accrued interest on the debt instruments constituting such Claim was previously included in the Holder's gross income but was not paid in full by the Debtor.  Such loss may be ordinary, but the tax law is unclear on this point.

        (i)      Consequences to Holders of Interests.  The Debtor is a limited liability company and is recognized as a "pass through" entity under the IRC.  As such, the tax consequences of the Debtor's generation of a profit or loss in a given year generally "pass through" to the Debtor's Equity Holders.  As such, the tax consequences of the Plan will vary depending on the specific circumstances of each Equity Holder.

        13.3    Certain U.S. Federal Income Tax Consequences of the Plan to the Debtor.  Because the Debtor is an S-Corporation, it is a "pass through" entity. As such, the Plan will have relatively few direct federal income tax consequences to the Debtor.  Instead, these tax consequences must be analyzed at the Equity Holders' level, as discussed above. However, to the extent the Debtor is liable for pre-petition taxes, those claims shall be treated in accordance with the Bankruptcy Code.

        13.4    Backup Withholding and Reporting.  The Disbursing Agent will withhold all amounts required by law to be withheld from payments subject to federal taxes, if any, and will comply with all applicable reporting requirements of the IRC.

        13.5    IRS Circular 230 Notice.  Any tax advice contained in this Disclosure Statement (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the IRC or (ii) promoting, marketing, or recommending to another party any tax-related matter addressed herein.

# ARTICLE 14

## ALTERNATIVES TO THE PLAN

        14.1    Best Interests of Creditors.  Even if a plan is accepted by each class of creditors and interest holders, in order to confirm a plan of reorganization, the Bankruptcy Court must independently determine that the plan is in the best interests of all classes of creditors and interest holders impaired by the plan.  The "best interests" test requires that the Bankruptcy Court find either that all members of an impaired class of claims or interests have accepted the plan or that the plan will provide such member a recovery that has a value at least equal to the value of the distribution that each such member would receive if the debtor were liquidated under Chapter 7 of the Bankruptcy Code.

To calculate what members of each impaired class of creditors and interest holders would receive if a debtor were liquidated, the Bankruptcy Court must first determine the aggregate dollar amount that would be generated from the debtor's assets if its Chapter 11 case were converted to a Chapter 7 case under the Bankruptcy Code. This "liquidation value" would consist primarily of the proceeds from a forced sale of the debtor's assets by a Chapter 7 trustee.

The amount of liquidation value available to unsecured creditors would be reduced by, first, the claims of secured creditors to the extent of the value of the collateral and, then, by the costs and expenses of liquidation, as well as by other administrative expenses and costs of both the Chapter 7 case and its Chapter 11 case. Costs of liquidation under Chapter 7 of the Bankruptcy Code would include the compensation of a trustee, as well as of counsel and other professionals retained by the trustee, asset disposition expenses, all unpaid expenses incurred by the debtor in this Chapter 11 case (such as compensation of attorneys, financial advisors and accountants) that are allowed in the Chapter 7 case, litigation costs and claims arising from the operations of the debtor during the pendency of the Chapter 11 case. The liquidation itself could trigger certain priority claims, such as claims for severance pay, and could accelerate other priority payments that otherwise would be due in the ordinary course of business, such as litigation costs and claims arising from the wind-down of the debtor's operations during the Chapter 7 case. Those administrative and priority claims would be paid in full out of the liquidation proceeds before the balance would be made available to pay general claims or to make any distribution in respect of interests.

In the event that proceeds remain after satisfaction of all allowed secured claims, administrative claims and priority claims, the remaining assets would be distributed pursuant to the "absolute priority rule," which requires that no junior creditor receive any distribution until all senior creditors are paid in full, and no interest holder receive any distribution until all creditors are paid in full, with interest. Once the Bankruptcy Court ascertains the projected recoveries of secured creditors, priority claimants, general unsecured creditors and interest holders in a liquidation, those recoveries are compared with the distribution offered to each class of claims or interests under the plan of reorganization to determine if the plan is in the best interests of creditors and interest holders of each class.

The Debtor believes that a Chapter 7 liquidation would result in recoveries substantially less than the recoveries expected to be received pursuant to the Plan and that these reduced recoveries would be received at a much later time. Additional administrative expenses would result from the appointment of a trustee or trustees and corresponding professionals. Furthermore, the Debtor believes that substantial additional claims would result from cessation of its operations.

14.2    Chapter 7 Liquidation Analysis. A reorganization plan cannot be confirmed unless the Bankruptcy Court finds that the plan is in the "best interests" of creditors and interest holders, taking into account the liquidation value of the debtor. In applying the "best interests" test of Section 1129(a)(7) of the Bankruptcy Code, the Bankruptcy Court would ascertain the hypothetical recoveries in a Chapter 7 liquidation to secured creditors, priority claimants, general unsecured creditors and interest holders. These hypothetical Chapter 7 liquidation recoveries would then be compared to the distributions offered to each class of claims or interests under the proposed plan of reorganization to determine if the plan satisfies the "best interests" test as set forth in Section 1129(a)(7) of the Bankruptcy Code.

Attached hereto as Exhibit "C" is a Liquidation Analysis for the Debtor assuming a hypothetical Chapter 7 liquidation in which a court-appointed trustee liquidates the Debtor's assets pursuant to an orderly liquidation.

The Liquidation Analysis is based on a number of estimates and assumptions which, while considered reasonable, are inherently subject to significant economic and competitive uncertainties and

contingencies beyond the control of the Debtor or any Chapter 7 trustee. Accordingly, there can be no assurance that the values reflected in the Liquidation Analysis would be realized if the Debtor were, in fact, to undergo such a Chapter 7 liquidation, and actual results could vary materially from those shown here. In addition, any liquidation would necessarily take place in the future under circumstances which presently cannot be predicted. Accordingly, if the Debtor's estate were in fact liquidated, the actual liquidation proceeds could be materially lower or higher than the amounts set forth below and no representation or warranty can be or is being made with respect to the actual proceeds that could be received in a Chapter 7 liquidation.

       14.3    <u>Other Alternatives to the Plan</u>. If the Plan is not confirmed, the Debtor or any other party in interest could attempt to formulate a different plan of reorganization. Such a competing plan of reorganization might involve either a reorganization and continuation of the Debtor's business or an orderly liquidation of its assets.

       **THE DEBTOR BELIEVES THAT THE CONFIRMATION AND IMPLEMENTATION OF THE PLAN IS PREFERABLE TO ANY OF THE LIQUIDATION ALTERNATIVES BECAUSE IT SHOULD PROVIDE GREATER RECOVERIES THAN THOSE AVAILABLE IN LIQUIDATION. IN ADDITION, OTHER ALTERNATIVES WOULD INVOLVE SIGNIFICANT DELAY, UNCERTAINTY AND SUBSTANTIAL ADDITIONAL ADMINISTRATIVE COSTS.**

<u>**ARTICLE 15**</u>

**PREFERENCES, FRAUDULENT CONVEYANCES
AND OTHER CAUSES OF ACTIONS**

       15.1    <u>In General</u>. Pursuant to Section 547 of the Bankruptcy Code, a debtor in possession may avoid as a preference a transfer of property made by the debtor to or for the benefit of a creditor on account of an antecedent debt while the debtor was insolvent, if that creditor received more than it would have received in a liquidation of the debtor under Chapter 7 of the Bankruptcy Code had the payment not been made and if the payment was made (i) within ninety (90) days before the date that the bankruptcy case commenced, or, (ii) if the creditor is an "insider" as defined in the Bankruptcy Code, within one year before the commencement of the bankruptcy case. A debtor is presumed to have been insolvent during the ninety (90) days preceding the commencement of its bankruptcy case. The power to avoid preferences is subject to a number of exceptions set forth in Section 547 of the Bankruptcy Code, including one exception applicable to the payment of obligations in the ordinary course of business on ordinary business terms. Furthermore, if the transferee extended credit subsequent to the transfer (and prior to the commencement of the bankruptcy case) for which the transferee was not repaid, such extension constitutes an offset against any otherwise recoverable transfer of property. If a transfer is recovered by the debtor, the transferee obtains a general unsecured claim against the debtor to the extent of the recovery.

       Pursuant to Section 548 of the Bankruptcy Code, a debtor in possession may avoid a fraudulent transfer of property, including the granting of a security interest in property, made while the debtor was insolvent or which rendered the debtor insolvent, if the debtor received less than reasonably equivalent value in exchange for such property and if the transfer was made within one (1) year before the commencement of the bankruptcy case. Pursuant to Section 544 of the Bankruptcy Code, a debtor in possession may avoid a transfer of property that is avoidable under applicable non-bankruptcy law. Section 544 of the Bankruptcy Code enables a debtor to apply applicable state laws, including fraudulent conveyance laws, to avoid a transfer of property.

15.1    <u>Retention and Enforcement of Claims or Interests</u>.  Pursuant to Section 1123(b)(3) of the Bankruptcy Code, Reorganized Debtor shall retain and have the exclusive right to enforce against any Person or Governmental Unit any and all causes of action and rights of the Debtor that arose both before and after the Petition Date, including the rights and powers of a trustee and debtor in possession and all causes of action granted pursuant to and still existing under Sections 502, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, other than those expressly released, compromised or assigned as part of or pursuant to the Plan.

The Debtor is not currently in a position to express an opinion on the merits of any Causes of Action or on the recoverability of any amounts as a result of any such Causes of Action. For purposes of providing notice, the Debtor states that any party in interest that engaged in business or other transactions with the Debtor prepetition or that received payments from the Debtor prepetition may be subject to litigation to the extent that applicable bankruptcy or non-bankruptcy law supports such litigation.

No Creditor or other party should vote for the Plan or otherwise rely on the Confirmation of the Plan or the entry of the Confirmation Order in order to obtain, or on the belief that they will obtain, any defense to any Causes of Action. No Creditor or other party should act or refrain from acting on the belief that it will obtain any defense to any Cause of Action. Additionally, unless otherwise specifically provided therein, the Plan does not, and is not intended to, release any Causes of Action or objections to Claims, and all such rights are specifically reserved in favor of the Reorganized Debtor. Creditors are advised that legal rights, claims, and rights of action the Debtor may have against them, if they exist, are retained under the Plan for prosecution unless expressly released. As such, Creditors are cautioned not to rely on (a) the absence of the listing of any legal right, claim or right of action against a particular Creditor in the Disclosure Statement, the Plan, or the Schedules or (b) the absence of litigation or demand prior to the Effective Date of the Plan as any indication that the Reorganized Debtor does not possess or does not intend to prosecute a particular Claim or cause of action if a particular Creditor votes to accept the Plan. It is the expressed intention of the Plan to preserve rights, claims, and rights of action of the Debtor, whether now known or unknown, for the benefit of the Estate and the Debtor's Creditors. A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Plan or the Disclosure Statement.

The Debtor does not presently know the full extent of the Causes of Action and, for purposes of voting on the Plan, all Creditors are advised that the Reorganized Debtor will have substantially the same rights that a Chapter 7 trustee would have with respect to the Causes of Action. Accordingly, neither a vote to accept the Plan by any Creditor nor the entry of the Confirmation Order will act as a release, waiver, bar or estoppel of any Cause of Action against such Creditor or any other Person or Entity, unless such Creditor, Person or Entity is specifically identified by name as a released party in the Plan, in the Confirmation Order, or in any other Final Order of the Bankruptcy Court. Confirmation of the Plan and entry of the Confirmation Order is not intended to and shall not be deemed to have any res judicata, collateral estoppel or other preclusive effect which would precede, preclude, or inhibit prosecution of such Cause of Action following Confirmation of the Plan.

## <u>ARTICLE 16</u>

### SOURCE OF INFORMATION PROVIDED

16.1    <u>Source of Information</u>.  The Debtor has used its books and records, knowledge and experience, opinions of accountants with respect to its historical financial statements, and opinions of legal counsel in the preparation of the information set forth in this Disclosure Statement.

16.2    <u>Additional Information</u>.  Statements contained herein concerning the provisions of any of the Plan Documents or any other document are not necessarily complete, and in each instance reference should be made to such document for the full text thereof.  Each such statement is qualified by such reference.  Certain documents referred to herein have not been attached as exhibits because of the impracticability of furnishing copies thereof to all parties in interest.  All of the Plan Documents and other documents referred to herein will be available for inspection on any Business Day after the Plan Documents Filing Date at the Plan Documents Review Center during normal business hours (9:00 a.m. to 4:00 p.m. Eastern Prevailing Time).

**<u>ARTICLE 17</u>**

**CONCLUSION**

**THE DEBTOR URGES HOLDERS OF IMPAIRED CLAIMS TO VOTE TO ACCEPT THE PLAN AND TO EVIDENCE SUCH ACCEPTANCE BY FILING THEIR BALLOTS WITH THE BANKRUPTCY COURT NO LATER THAN 4:00 P.M., EASTERN  PREVAILING TIME, ON _____, 2012.**

Dated:  May 3, 2012                                          Respectfully submitted,

BUSH ROSS, P.A.                                     **TREE HOUSE, LLC**
Post Office Box 3913
Tampa, Florida  33602
(813) 224-9255 (telephone)                    By:___/s/ Garrett J. Kenny_____
(813) 223-9620 (telecopy)                              GARRETT J. KENNY, President
Attorneys for the Debtor                               of Feltrim Developments US, Inc.,
                                                                   as Manager for Debtor

By:____/s/ Adam Lawton Alpert_____
        Adam Lawton Alpert
        Florida Bar No. 0490857
        *aalpert@bushross.com*

**<u>EXHIBIT A</u>**


**PLAN OF REORGANIZATION UNDER
CHAPTER 11 OF THE UNITED STATES BANKRUPTCY
CODE FOR TREE HOUSE, LLC DATED AS OF MAY 3, 2012**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                          Case No.: 8:12-bk-05428-KRM
                                                Chapter 11

TREE HOUSE, LLC

                    Debtor.

_____/

**PLAN OF REORGANIZATION UNDER
CHAPTER 11 OF THE UNITED STATES BANKRUPTCY
CODE FOR TREE HOUSE, LLC DATED AS OF MAY 3, 2012**

Adam Lawton Alpert, Esq.
BUSH ROSS, P. A.
Post Office Box 3913
Tampa, Florida  33601-3913
(813) 224-9255 (telephone)
(813) 223-9620 (telecopy)
Attorneys for the Debtor

## INTRODUCTION

Tree House, LLC hereby proposes the following plan of reorganization (as may be amended from time to time, and including all addenda, exhibits, schedules and other attachments hereto, as any of the same may be amended from time to time, all of which are incorporated herein by reference, the "**Plan**"), for the reorganization of the Debtor and the resolution of the outstanding Claims against and Interests in the Debtor pursuant to the provisions of Chapter 11 of the Bankruptcy Code and requests Confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code. Capitalized terms used in the Plan shall have the meanings ascribed to such terms in Article 1 of the Plan or as otherwise defined herein. The Debtor is the proponent of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

Under Section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from the Holder of a Claim or Interest until such time as the Debtor's Disclosure Statement has been approved by the Bankruptcy Court and distributed to Holders of Claims and Interests. The Disclosure Statement was conditionally approved by the Bankruptcy Court through the entry of the Disclosure Statement Approval Order and has been distributed simultaneously with the Plan to all parties whose votes are being solicited. The Disclosure Statement contains, among other things, (a) a discussion of the Debtor's history, business, properties, and operations, (b) a summary of significant events which have occurred to date in this case, (c) a summary of the means of implementing and funding the Plan, and (d) the procedures for voting on the Plan. No materials, other than the accompanying Disclosure Statement and any exhibits and documents attached thereto or referenced therein, have been approved by the Debtor for use in soliciting acceptances or rejections of the Plan. ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTOR ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and those restrictions or modifications set forth in Article 13 of the Plan, the Debtor expressly reserves the right to alter, amend, modify, revoke or withdraw the Plan, one or more times, prior to the Plan's substantial consummation.

THE PLAN AND THE DISCLOSURE STATEMENT HAVE NOT BEEN REQUIRED TO BE PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW.

## ARTICLE 1

### DEFINITIONS

Unless the context otherwise requires, the following terms shall have the following meanings when used in initially capitalized form in the Plan.  Such meanings shall be equally applicable to both the singular and plural forms of such terms.  Any term used in capitalized form that is not defined in the Plan but that is defined in the Bankruptcy Code or Bankruptcy Rules (as such terms are hereinafter defined) shall have the meaning ascribed to such term in the Bankruptcy Code or Bankruptcy Rules. The rules of construction set forth in Section 102 of the Bankruptcy Code shall apply in construction of the Plan.

1.1    "**Administrative Expense**" means (a) any cost or expense of administration of the Reorganization Case that is allowed under Section 503(b) or 507(a)(1) of the Bankruptcy Code, to the extent the party claiming any such Administrative Expense files an application, motion, request or other Bankruptcy Court-approved pleading seeking such expense in the Reorganization Case on or before the

applicable Administrative Expense Claims Bar Date, including (i) any actual and necessary costs and expenses of preserving the Estate or operating the businesses of the Debtor (including wages, salaries, or commissions for services rendered) incurred on or after the Petition Date, (ii) any Postpetition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in Possession in the ordinary course of its business, (iii) any Claim granted administrative priority status by a Final Order of the Bankruptcy Court, (iv) any Claim by a Governmental Authority for taxes (and for interest and/or penalties related to such taxes) due for any Postpetition tax year or period, and (v) compensation for reimbursement of expenses of Professionals awarded or allowed pursuant to an order of the Bankruptcy Court under Section 330(a) or 331 of the Bankruptcy Code; (b) any Superpriority Claim; (c) all fees and charges assessed against the Estate under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930; and (d) any and all other costs or expenses of administration of the Reorganization Case that are allowed by Final Order of the Bankruptcy Court; provided, however, that, when used in the Plan, the term "Administrative Expense" shall not include any Priority Tax Claim, any Disallowed Claim, or, unless otherwise expressly provided in the Plan, any of the Claims in Classes 1 through 4. In no event shall any Claim set out in a Proof of Claim be deemed to be an Administrative Expense (except for any Claim by a Governmental Authority for taxes (and for interest and/or penalties related to such taxes) which accrued and is first due for any Postpetition tax year or period).

1.2    "**Administrative Expense Claim**" means any Claim for the payment of any Administrative Expense.

1.3    "**Administrative Expense Claims Bar Date**" means the date established by an order or orders of the Bankruptcy Court as the deadline for the filing by any Creditor or other party in interest of an application, motion, request or other Bankruptcy Court-approved pleading for allowance of any Administrative Expense Claim that arose or is deemed to have arisen on or after the Petition Date. Holders of Administrative Expense Claims (including Holders of any Claims for Postpetition federal, state or local taxes) that do not file an application, motion, request or other Bankruptcy Court-approved pleading by the Administrative Expense Claims Bar Date shall be forever barred, estopped and enjoined from ever asserting such Administrative Expense Claims against the Debtor, or any of its Property, or against its Estate, and such Holders shall not be entitled to participate in any distribution under the Plan on account of any such Administrative Expense Claims.

1.4    "**Affiliate**" shall have the meaning ascribed to such term in Section 101(2) of the Bankruptcy Code.

1.5    "**Allowed**" means and includes, with respect to any Claim or Interest, (a) any Claim (other than a Disputed Claim) or Interest, proof of which was timely filed or, by Order of the Bankruptcy Court, was not required to be filed or (b) any Claim (other than a Disputed Claim) or Interest that is listed in the Schedules as liquidated in amount and not disputed or Contingent, and, in each such case in (a) and (b) herein, as to which either (1) no objection to the allowance thereof has been or may be filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court or (2) the Claim or Interest has been allowed by a Final Order of the Bankruptcy Court (but only to the extent so allowed).

1.6    "**Allowed Amount**" means the dollar amount in which a Claim is Allowed; provided, however, that the Allowed Amount of a Claim shall not exceed the Estimated Amount of such Claim as determined pursuant to an Estimation Order.  No amount shall be Allowed for or on account of punitive damages, penalties or postpetition interest on account of any Claim except as otherwise expressly specified in the Plan or provided by Final Order of the Bankruptcy Court.

1.7    "**Assets**" means all assets of the Debtor's Estate.

- 3 -

1.8    "**Available Cash**" means: (i) with respect to the payments to Holders of Allowed Claims to be made on the Effective Date, the amount of Cash determined by the Debtor, in the exercise of its reasonable business judgment after accounting for reserves for operations, and the availability of financing, to be available for distribution to such Holders of Allowed Claims under this Plan; and (ii) with respect to each subsequent distribution to any Holder of an Allowed Claim, the amount of Cash available (including availability under the financing) to make payments or distributions pursuant to this Plan at the time of such distribution.

1.9    "**Avoidance Action**" means a Cause of Action which the Debtor may assert under Sections 541, 542, 543, 544, 547, 548, 549, 550 or 553 of the Bankruptcy Code.

1.10    "**Ballot**" means the ballot accompanying the Disclosure Statement upon which each Holder of a Claim or Interest entitled to vote on the Plan shall indicate their acceptance or rejection of the Plan in accordance with the Voting Instructions.

1.11    "**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as in effect on the Petition Date, together with all amendments and modifications to the extent applicable to the Reorganization Case.

1.12    "**Bankruptcy Court**" means either the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, having jurisdiction over the Reorganization Case or, to the extent the reference is withdrawn, the District Court.

1.13    "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as applicable to the Reorganization Case, together with all amendments and modifications to the extent applicable to the Reorganization Case.

1.14    "**Bar Date**" means the bar date(s) established by the Bankruptcy Court from time to time as the last day for filing Proofs of Claim against or proofs of Interest in the Debtor, including with respect to executory contracts and unexpired leases that are rejected pursuant to the Plan, pursuant to a Final Order of the Bankruptcy Court or otherwise pursuant to Section 365 of the Bankruptcy Code; provided however, that, when used in the Plan, the term "Bar Date" shall not include the Administrative Expense Claims Bar Date.

1.15    "**Business Day**" means any day other than a Saturday, Sunday or legal holiday (as such term is defined in Bankruptcy Rule 9006(a)).

1.16    "**Cash**" means lawful currency of the United States of America and its equivalents. When used in the Plan with respect to a distribution under the Plan, the term "Cash" means lawful currency of the United States, a certified check, a cashier's check, a wire transfer of immediately available funds from any source, or a check drawn on a domestic bank.

1.17    "**Causes of Action**" means any and all of the Debtor's or the Debtor's Estate's actions, claims, demands, rights, defenses, counterclaims, suits and causes of action, whether known or unknown, in law, equity or otherwise, including (a) all Avoidance Actions; and (b) any and all other claims or rights of the Debtor of any value whatsoever, at law or in equity, against any Creditor or other third party.

1.18    "**Claim**" means (a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, Contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed,

- 4 -

Contingent, matured, unmatured, disputed, undisputed, secured or unsecured.  The term "Claim" shall be broadly construed herein to include all manner and type of claim, whenever and wherever such claim may arise.

1.19    "**Class**" means a category of Holders of Claims or Interests as set forth in Article 3 of the Plan.

1.20    "**Clerk**" means the Clerk of the Bankruptcy Court.

1.21    "**Clerk's Office**" means the Office of the Clerk of the Bankruptcy Court located at the Sam M. Gibbons United States Courthouse, 801 North Florida Avenue, Tampa, Florida, 33602.

1.22    "**Conditional Approval Order**" means the Order conditionally approving the Debtor's Disclosure Statement and fixing the time for filing acceptances or rejections of the Debtors' Plan, combined with notice of the hearing on Confirmation of Plan and other related matters entered in the Reorganization Case.

1.23    "**Confirmation**" or "**Confirmation of the Plan**" means the approval of the Plan by the Bankruptcy Court at the Confirmation Hearing.

1.24    "**Confirmation Date**" means the date on which the Confirmation Order is entered on the Docket pursuant to Bankruptcy Rule 5003(a).

1.25    "**Confirmation Hearing**" means the hearing which will be held on _____, 2012 at __:_0 _.m. before the Bankruptcy Court to consider Confirmation of the Plan and related matters pursuant to Section 1128(a) of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.26    "**Confirmation Order**" means the Order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code  and  other applicable sections of the Bankruptcy Code.

1.27    "**Contingent**" means a right that has not accrued and that is dependent upon a future event or events that has or have not occurred and may never occur.

1.28    "**Creditor**" has the same meaning ascribed in Section 101(10) of the Bankruptcy Code and shall refer to any Holder of a Claim against the Debtor or Holder of any Claim against property of the Debtor as defined in Section 102(2) of the Bankruptcy Code, including Creditors with Administrative Expenses, Priority Tax Claims, Priority Claims, Secured Claims, and General Unsecured Claims.

1.29    "**Debtor**" means Tree House, LLC, a Florida limited liability company.

1.30    "**Debtor in Possession**" means the Debtor in the capacity, and with the status and rights conferred by Sections 1107 and 1108 of the Bankruptcy Code.

1.31    "**Disallowed Claim**" means any Claim which has been disallowed by an order of the Bankruptcy Court, which order has not been stayed pending appeal.

1.32    "**Disbursing Agent**" means the Reorganized Debtor or a Person selected by the Reorganized Debtor pursuant to the Plan (with approval of the Bankruptcy Court), as agent of the Bankruptcy Court, to hold and distribute the consideration to be distributed to the Holders of Allowed Claims under the Plan.

1.33    "**Disclosure Statement**" means the disclosure statement for the Plan approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code (including all annexes, exhibits and schedules attached thereto or referenced therein), as such disclosure statement may be amended or modified from time to time.

1.34    "**Disputed Claim**" means any Claim (other than a Disallowed Claim) that is not an Allowed Claim and (a) as to which a Proof of Claim has been filed with the Clerk's Office or is deemed filed under applicable law or order of the Bankruptcy Court, or (b) which has been scheduled in the Schedules, and, in the case of subparagraph (a) or (b) above, as to which an objection has been or may be timely filed or deemed filed under the Plan, the Bankruptcy Code, the Bankruptcy Rules or an order of the Bankruptcy Court and any such objection has not been (i) withdrawn, (ii) overruled or denied by an order of the Bankruptcy Court, or (iii) sustained by an order of the Bankruptcy Court. In addition to the foregoing, a Disputed Claim shall also mean a Claim that is not an Allowed Claim, whether or not an objection has been or may be timely filed, if (a) the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules, (b) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Schedules, (c) any corresponding Claim has been scheduled in the Schedules as disputed, contingent or unliquidated, (d) no corresponding Claim has been scheduled in the Schedules, or (e) such Claim is reflected as unliquidated or contingent in the Proof of Claim filed in respect thereof.  To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection. To the extent that the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules, such Claim shall be a Disputed Claim only to the extent of the amount specified in the Proof of Claim which is in excess of the amount of the Claim as scheduled.

1.35    "**Distribution Date**," when used with respect to an Allowed Claim, means the date that is as soon as reasonably practicable after the later of: (a) the Effective Date or (b) the first (1st) Business Day of the next calendar quarter after the date upon which the Claim becomes Allowed, unless the Claim becomes Allowed within fifteen (15) days before the first (1st) Business Day of the next calendar quarter, in which case the Distribution Date shall be the first (1st) Business Day of the next succeeding calendar quarter.

1.36    "**District Court**" means the United States District Court for the Middle District of Florida, or the unit thereof having jurisdiction over the matter in question.

1.37    "**Docket**" means the docket in the Reorganization Case maintained by the Clerk.

1.38    "**Effective Date**" means, and shall occur on, the first (1st) Business Day immediately following the first date upon which all of the conditions to occurrence of the Effective Date contained in Section 10.2 of the Plan have been satisfied or waived by the Debtor; provided, however, that the Effective Date may occur at a point in time when the Confirmation Order is not a Final Order at the sole option of the Debtor unless the effectiveness of the Confirmation Order has been stayed or vacated, in which case the Effective Date shall be the first (1st) Business Day immediately following such date as is thirty (30) calendar days following the expiration or other termination of any stay of effectiveness of the Confirmation Order; and, further provided, that the Effective Date shall not occur until all of the conditions to occurrence of the Effective Date set forth in Section 10.2 of the Plan have been satisfied or waived by the Debtor.

1.39    "**Entity**" has the meaning ascribed in Section 101(15) of the Bankruptcy Code.

1.40    "**Estate**" means the estate created for the Debtor by Section 541 of the Bankruptcy Code upon the commencement of the Reorganization Case.

1.41    "**Estimated Amount**" means the amount at which the Bankruptcy Court or, where required by applicable law, the District Court, estimates any Claim against the Debtor which is Contingent, unliquidated or disputed, for the purpose of: (a) allowance under Section 502(c) of the Bankruptcy Code or (b) assisting the Bankruptcy Court in making the findings required for Confirmation of the Plan pursuant to Sections 1129(a)(7)(A)(ii) and (a)(11) and, if necessary, Sections 1129(b)(1) and (2) of the Bankruptcy Code.

1.42    "**Estimation Order**" means an Order of the Bankruptcy Court or, where required by applicable law, the District Court, that determines the Estimated Amount of a Claim against the Debtor.

1.43    "**Final Order**" means an Order, the implementation, operation or effect of which has not been stayed and as to which Order (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing or writ of certiorari has expired and as to which no appeal or petition for review or rehearing or certiorari has been taken and is pending.

1.44    "**Final Decree Date**" means the date on which a Final Order, obtained after a hearing on notice to all Entities entitled to Notice and such other entities as the Bankruptcy Court may direct, has been entered determining that the Reorganization Case should be closed.

1.45    "**General Unsecured Claim**" means any Claim which is not an Administrative Expense Claim, Priority Tax Claim, Priority Claim or Secured Claim, including (a) any Claim arising from the rejection of an executory contract or unexpired lease under Section 365 of the Bankruptcy Code, (b) any portion of a Claim to the extent the value of the Creditor's interest in the applicable Estate's interest in the collateral securing such Claim is less than the amount of the Allowed Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Allowed Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code, (c) any Claims arising from the provision of goods or services to the Debtor prior to the Petition Date, and (d) any Claim designated as a General Unsecured Claim elsewhere in the Plan.

1.46    "**General Unsecured Creditor**" means any Creditor holding a General Unsecured Claim.

1.47    "**Governmental Unit**" means any federal, state, local or municipal (a) government, (b) governmental agency, (c) governmental commission, (d) governmental department, (e) governmental bureau, (f) governmental ministry or (g) governmental entity.

1.48    "**Holder**" means an Entity holding a Claim or Interest.

1.49    "**Impaired**" means impaired within the definition of Section 1124 of the Bankruptcy Code.

1.50    "**Interest**" means (a) any equity interest in the Debtor or (b) any claim (i) arising from rescission of a purchase or sale of a security of the Debtor or of an Affiliate of the Debtor, (iii) for damages arising from the purchase or sale of such a security, or (iii) for reimbursement or contribution allowed under Section 502 on account of such claim.

1.51    "**Liabilities**" means any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness of any and every kind and nature whatsoever, whether heretofore, now or

hereafter owing, arising, due or payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen or unforeseen, in law, equity or otherwise, of or relating to the Debtor, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence taking place prior to the Effective Date in any way relating to the Debtor, any assets of the Debtor, the business or operations of the Debtor, the Reorganization Case, or the Plan, including any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness based in whole or in part upon any Claim of or relating to successor liability, transferee liability, or other similar theory.

1.52    "**Lien**" means, with respect to any asset or Property, any mortgage, pledge, security interest, lien, right of first refusal, option or other right to acquire, assignment, charge, claim, easement, conditional sale agreement, title retention agreement, defect in title, or other encumbrance or hypothecation or restriction of any nature pertaining to or affecting such asset or Property, whether voluntary or involuntary and whether arising by law, contract or otherwise.

1.53    "**Local Rules**" means the Local Rules of the United States Bankruptcy Court for the Middle District of Florida, as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Reorganization Case.

1.54    "**Order**" means an order or judgment of a court.

1.55    "**Person**" means any person, individual, partnership, corporation, limited liability company, joint venture company, association or other entity of whatever kind, whether or not for profit, including, but not limited to, any "person" as such term is defined in Section 101(41) of the Bankruptcy Code, but excluding any Governmental Unit.

1.56    "**Petition Date**" means April 10, 2012.

1.57    "**Plan**" means the Plan of Reorganization under Chapter 11 of the United States Bankruptcy Code for Tree House, LLC dated as of May 3, 2012, and all exhibits to the Plan, as the same may be amended, supplemented, modified or amended and restated from time to time in accordance with the provisions of the Plan and the Bankruptcy Code.

1.58    "**Plan Documents**" means all documents, attachments and exhibits, as the same may be amended, modified or supplemented from time to time, that aid in effectuating the Plan, which documents, attachments and exhibits shall be filed by the Debtor with the Bankruptcy Court on or before the Plan Documents Filing Date.

1.59    "**Plan Documents Filing Date**" means the date for the filing of the Plan Documents which shall be either: (a) the date, as determined by the Debtor, that is as soon as practicable, but that in no event is later than five (5) calendar days before the commencement of the Confirmation Hearing or (b) such other date (or dates) as determined by the Bankruptcy Court.

1.60    "**Postpetition**" means arising or accruing on or after the Petition Date and before the Effective Date.

1.61    "**Prepetition**" means arising or accruing prior to the Petition Date.

1.62    "**Priority Claim**" means a Claim that is entitled to a priority in payment pursuant to subparagraphs (3) through (7) of Section 507(a) of the Bankruptcy Code and that is not an Administrative Expense Claim, a Priority Tax Claim, a Secured Claim or a General Unsecured Claim.

1.63    "**Priority Tax Claim**" means a Claim of a governmental unit that is entitled to a priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code and that is not an Administrative Expense Claim, a Priority Claim, a Secured Claim or a General Unsecured Claim.

1.64    "**Professional**" means any professional employed in the Reorganization Case with the approval of the Bankruptcy Court pursuant to Section 327 or 1103 of the Bankruptcy Code.

1.65    "**Proof of Claim**" means a proof of claim filed with the Bankruptcy Court with respect to the Debtor pursuant to Bankruptcy Rule 3001, 3002 or 3003.

1.66    "**Pro Rata Share**" means the same proportion an Allowed Claim in a particular Class bears to the total amount of Allowed Claims in such Class.

1.67    "**Proof of Claim**" means any proof of claim filed with the Bankruptcy Court with respect to the Debtor pursuant to Bankruptcy Rules 3001 or 3002.

1.68    "**Property**" means any property or asset of any kind, whether real, personal or mixed, tangible or intangible, whether now existing or hereafter acquired or arising, and wherever located, and any interest of any kind therein.

1.69    "**Proponent**" means the Debtor as the proponent of the Plan.

1.70    "**Pro Rata Share**" means, with respect to any distribution under the Plan to the Holder of an Allowed Claim in a particular Class or otherwise, a fraction, the numerator of which shall be the amount of such Holder's Allowed Claim and the denominator of which shall be the sum of all Allowed Claims and all Reserved Claims in such Class and, if applicable, other Classes, all determined as of the applicable Distribution Date.

1.71    "**Rejected Contracts**" has the meaning ascribed to such term in Article 8 of the Plan.

1.72    "**Released Parties**" means the Debtor, the Reorganized Debtor, and its directors, officers, employees, agents, representatives, attorneys, accountants, and Professionals (acting in such capacity).

1.73    "**Reorganization Case**" means the above-captioned Chapter 11 case for the Debtor that was filed on the Petition Date.

1.74    "**Reorganized Debtor**" means Tree House, LLC on and after the Effective Date as reorganized pursuant to the Plan.

1.75    "**Reserved Claims**" means all Disputed Claims as of the applicable determination date in the full amount listed in the Schedules, unless a Proof of Claim was timely filed with respect to such Claim, in which case in the face amount of such Proof of Claim, or unless such Claim has been estimated by the Bankruptcy Court for the purpose of allowance pursuant to Section 502(c) of the Bankruptcy Code, in which case in such estimated amount. Unless any order of the Bankruptcy Court estimating a Claim provides otherwise, the amount so estimated shall apply both for voting purposes and for purposes of computing Reserved Claims. As used in the Plan, the term "Reserved Claims" shall not include any Disallowed Claims.

1.76    "**Schedules**" means the schedules, statements and lists filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they may be amended or supplemented from time to time.

1.77    "**Secured Claim**" means any Claim that is (a) secured in whole or part, as of the Petition Date, by a Lien which Lien is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or (b) subject to setoff under Section 553 of the Bankruptcy Code, but only to the extent of the value of the assets or property securing any such Claim, or to the extent of the amount subject to setoff, as the case may be.

1.78    "**Statutory Fees**" means any fees or charges assessed against the Debtor's Estate under Section 1930, chapter 123 of title 28 of the United States Code.

1.79    "**Unimpaired**" means any Claim that is not Impaired within the meaning of Section 1124 of the Bankruptcy Code.

1.80    "**United States Trustee**" means the Office of the United States Trustee for the Middle District of Florida.

1.81    "**Units**" means the 18 condominium units owned and rented out by the Debtor at the Grenelefe Resort located at 3200 State Rd. 546 E., Haines City, Polk County, Florida.

1.82    "**Unsecured Creditors' Fund**" means the sum of Twenty Thousand and no/100 Dollars ($20,000.00) to be paid to the Reorganized Debtor by Feltrim Development NA, Inc. in five (5) equal annual installments commencing March 31, 2013 and continuing through March 31, 2017, which amount shall be available for distribution by the Disbursing Agent to the Holders of Allowed Unsecured Claims under the Plan.

1.83    "**Voting Deadline**" means the last day to file a Ballot accepting or rejecting the Plan as fixed by the Conditional Approval Order.

1.84    "**Voting Instructions**" means the instructions for voting on the Plan contained in the section of the Disclosure Statement entitled "Voting Instructions."

## ARTICLE 2

### TREATMENT OF ADMINISTRATIVE CLAIMS
### AND PRIORITY TAX CLAIMS

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified in the Plan. The treatment accorded to Administrative Expense Claims and Priority Tax Claims is set forth below in this Article 2.

2.1    Administrative Expense Claims.  Each Holder of an Allowed Administrative Expense Claim (except any such Holder that agrees to different treatment) shall receive the Allowed Amount of such Holder's Allowed Administrative Expense Claim, without interest, in Cash, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, on the Distribution Date, or such other treatment as may be agreed upon by the Holder of such Allowed Administrative Expense Claim and the Debtor; provided, however, that Allowed Administrative Expense Claims representing (a) postpetition liabilities incurred in the ordinary course of business by the Debtor and (b) postpetition contractual liabilities arising under loans or advances to the Debtor, whether or not incurred in the ordinary course of business, shall be paid by the Reorganized Debtor in accordance with the terms and conditions of the particular transactions relating to such liabilities and any agreements relating thereto.

- 10 -

All fees and charges assessed against the Estate under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930, through the Effective Date shall be paid to the United States Trustee no later than thirty (30) days following the Effective Date. At the time of such payment, the Debtor shall also provide to the United States Trustee an appropriate report indicating the disbursements for the relevant periods. Following the Effective Date, the Debtor shall be responsible for any such fees required pursuant to 28 U.S.C. §1930(a)(6) for disbursements made by the Debtor. All such payments to the United States Trustee shall be in the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) based upon the applicable disbursements for the relevant post-confirmation periods and shall be made within the time period set forth in 28 U.S.C. §1930(a)(6), until the earlier of (i) the closing of the Reorganization Case by the issuance of a Final Order by the Bankruptcy Court or the Final Decree Date, or (ii) the entry of an order by the Bankruptcy Court dismissing the Reorganization Case or converting the Reorganization Case to another chapter under the Bankruptcy Code.

      2.2    <u>Priority Tax Claims</u>.  Each Holder of an Allowed Priority Tax Claim (except any such Holder that agrees to different treatment) shall receive the Allowed Amount of such Holder's Allowed Priority Tax Claim, without post-petition interest or penalty, (a) in Cash, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, on the Distribution Date, or (b) in regular Cash installment payments over a period not exceeding five years from the Petition Date of a total value, as of the Effective Date, equal to the Allowed Amount of such Claim.  The obligations under this Section 2.2 in respect of any Allowed Priority Tax Claim that is secured by a valid, perfected and enforceable Lien shall be collateralized by a continuation of the Lien underlying such Claim and such obligation shall be and become due and payable upon the sale or other disposition of the collateral therefor.

**ARTICLE 3**

**CLASSIFICATION OF CLAIMS AND INTERESTS**

      3.1    <u>Classification</u>.

      (a)    <u>General</u>.  Pursuant to Section 1122 of the Bankruptcy Code, Section 3.2 herein sets forth a designation of Classes of Claims and Interests.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of the Class and is classified in a different Class to the extent the Claim or Interest qualifies within the description of that different Class.

      (b)    <u>Unclassified Claims</u>.  In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified and are excluded from the Classes established in Section 3.2 herein.  The treatment accorded Administrative Expense Claims and Priority Tax Claims is set forth in Article 2 of the Plan.

      3.2    <u>Classes</u>.  For the purposes of the Plan, the Claims against, or Interests in, the Debtor are grouped in the following Classes in accordance with Section 1122(a) of the Bankruptcy Code:

      (a)    <u>Class 1 - Priority Claims</u>.  Class 1 consists of all Priority Claims.

      (b)    <u>Class 2 - Secured Claims of the Polk County Tax Collector and Tax Certificate Holders</u>.  Class 2 consists of the Secured Claims of the Polk County Tax Collector and tax certificate holders.

      (c)    <u>Class 3 - CNL Bank Secured Claim</u>. Class 2 consists of the Secured Claim of CNL Bank.

(d)      Class 4 - Unsecured Claims.  Class 4 consists of all General Unsecured Claims.

(e)      Class 5 - Interests in the Debtor.  Class 5 consists of all Interests in the Debtor.

# ARTICLE 4

## IDENTIFICATION OF CLAIMS AND INTERESTS
## IMPAIRED AND NOT IMPAIRED BY THE PLAN

4.1      Classes of Claims Not Impaired by the Plan.  Class 1 is Unimpaired by the Plan.  Under Section 1126(f) of the Bankruptcy Code, the Holders of those Claims are presumed conclusively to have voted to accept the Plan and, therefore, the votes of those Holders shall not be solicited.

4.2      Classes of Claims and Interests Impaired by the Plan.  Classes 2 through 5 are Impaired by the Plan.  The Holders of Claims and Interests in Classes 2 through 5 are entitled to vote to accept or reject the Plan.

# ARTICLE 5

## TREATMENT OF ALLOWED CLAIMS AND ALLOWED INTERESTS

The Allowed Claims and Allowed Interests, as classified in Article 3 herein, shall be satisfied in the manner set forth in this Article 5.  The treatment of, and the consideration to be received by, Holders of Allowed Claims and Holders of Allowed Interests pursuant to the Plan shall be in full and final satisfaction, settlement, release, extinguishment and discharge of their respective Allowed Claims and Allowed Interests (of any nature whatsoever).

5.1      Claims and Interests.  The following constitutes the treatment under the Plan of the Allowed Claims and Allowed Interests:

(a)      Class 1 - Priority Claims.  Class 1 consists of all Priority Claims.  Each Holder of an Allowed Priority Claim shall receive (1) the Allowed Amount of such Holder's Allowed Priority Claim, in Cash, on the Distribution Date, in accordance with Section 1129(a)(9)(B) of the Bankruptcy Code, (2) such other treatment as may be agreed to in writing by such Holder and the Debtor, or (3) payment as otherwise ordered by a Final Order of the Bankruptcy Court.  Notwithstanding the foregoing, for all Priority Claims for security deposits held by the Debtor under any unexpired leases of Units assumed by the Reorganized Debtor either by Final Order or under Section 8.1(b) of the Plan, such security deposits shall be retained by the Reorganized Debtor and are subject to the terms of the respective unexpired leases.

(b)      Class 2 - Secured Claims of the Polk County Tax Collector and Tax Certificate Holders.  Class 2 consists of the Secured Claims of the Polk County Tax Collector and tax certificate holders.  The Polk County Tax Collector and any Holders of issued tax certificates for ad valorem taxes (except to the extent that such Holder agrees to different treatment) shall receive the Allowed Amount of its Secured Claim (a) in Cash, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, on the Distribution Date, or (b) in regular Cash installment payments beginning on April 10, 2013 and continuing annually through April 10, 2017 equal to the Allowed Amount of such Claim together with accrued interest at the applicable interest rate under non-bankruptcy law.  Any Holder of a tax certificate shall be prohibited from applying for the issuance of a tax deed during the term of the Plan as long as the Debtor is not in default.  To the extent that any Class 2 Claim is secured by a valid, perfected and enforceable Lien, such Claim shall be collateralized by a continuation of such Lien and

such Claim shall be and become due and payable upon the sale or other disposition of the collateral therefor.

        (c)    <u>Class 3 - Secured Claim of CNL Bank</u>.  Class 3 consists of the Secured Claim of CNL Bank.  On the Effective Date, the Holder of the Allowed Class 3 Secured Claim shall either (1) receive such other treatment as the Debtor and the Holder of such Claim shall agree upon in writing; or (2) (i) retain the Liens securing its Allowed Claim, and (ii) receive a promissory note from the Reorganized Debtor with the following terms:

| | |
|---|---|
| Principal Amount: | CNL Bank shall have an Allowed Class 3 Secured Claim of $800,000.00. |
| Interest Rate: | Five percent (5%) per annum. |
| Monthly Payment Terms: | Amortized monthly payments of principal and accrued interest based upon a 25-year term beginning May 31, 2012 and continuing through April 30, 2017. |
| Balloon Payment Terms: | A balloon payment of the outstanding remaining principal and accrued interest is due in full as of May 31, 2017. |
| Collateral: | CNL Bank shall retain its Liens against the collateral securing its Allowed Secured Class 3 Claim to the same extent, validity and priority that such Claim had prior to the Petition Date. |

        (d)    <u>Class 4 - General Unsecured Claims</u>.  Class 4 consists of the General Unsecured Claims not otherwise classified in Classes 1, 2 and 3 above.  On March 31 of each calendar year from 2013 through 2017, the Disbursing Agent shall disburse to each Holder of an Allowed Unsecured Claim a distribution in Cash in the amount of their Pro Rata Share of the amount in the Unsecured Creditors' Fund.

        (e)    <u>Class 5 - Interests</u>.  Class 5 consists of all Interests.  On the Effective Date, all existing Interests shall be extinguished.  On the Effective Date, new membership Interests in the same amount as were issued and authorized prepetition shall be issued to Feltrim Development NA, Inc. in exchange for its agreement to fund any post-confirmation operating shortfalls and funds required for payments under the Plan; provided, however, that Feltrim Development NA, Inc. shall not be entitled to any distribution from the Reorganized Debtor on account of such Interests until and unless each Holder of an Allowed Claim in Classes 1 through 4 is satisfied in full as provided under this Plan.

**ARTICLE 6**

**MEANS FOR EXECUTION OF PLAN**

        6.1    <u>Plan Funding</u>.  The Debtor will fund the Plan from the Available Cash and the income from the Reorganized Debtor's rental of the Units.  Any operating shortfalls or funds required for payments under the Plan, including the Unsecured Creditors' Fund, will be funded by Feltrim Development NA, Inc.  The Debtor anticipates that such funds will be sufficient to pay all remaining Allowed Administrative Claims, Statutory Fees, Priority Tax Claims, and Priority Claims on the Effective

- 13 -

Date and thereafter when payments are required to be made under the Plan when such Claims become Allowed Claims.

6.2     Continued Corporate Existence. The Debtor will continue to exist after the Effective Date as a corporate entity with all of the powers of a for-profit corporation under Florida law and pursuant to its articles of incorporation and bylaws or other organizational documents in effect before the Effective Date, as such documents are amended by or pursuant to the Plan or pursuant to any amended articles of incorporation or amended bylaws. Notwithstanding the foregoing, the Debtor may change its status of organization or formation or alter its corporate structure (either through mergers, consolidations, restructurings, conversions, dispositions, liquidations, dissolutions, or otherwise) after the Effective Date, as may be determined by the Reorganized Debtor to be appropriate. In each case in which the surviving, resulting, or acquiring entity shall perform the obligations of the Reorganized Debtor under the Plan to pay or otherwise satisfy all Allowed Claims.

6.3     Provisions Concerning Plan Distributions

        (a)     Distributions. The Reorganized Debtor shall make all distributions required under the Plan.

        (b)     Date of Distributions. Distributions shall be made on the Distribution Date, unless otherwise provided in the Plan Documents or as may be ordered by the Bankruptcy Court. Distributions to be made on the Distribution Date shall be deemed made on the Distribution Date if made either (i) on the Distribution Date or (ii) as soon as practicable thereafter, but in no event later than ten (10) Business Days after the Distribution Date, except as otherwise provided for herein, or except as may be ordered by the Bankruptcy Court.

6.4     Transactions on Business Days. If the Effective Date, or any other date on which a transaction may occur under the Plan, shall occur on a day that is not a Business Day, the transactions contemplated by the Plan to occur on such day shall occur instead on the next succeeding Business Day.

6.5     Disputed Claims.

        (a)     Objection Deadline. As soon as practicable, but in no event later than sixty (60) calendar days after the Confirmation Date, unless otherwise ordered by the Bankruptcy Court, objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders thereof and the United States Trustee for the Middle District of Florida.

        (b)     Prosecution of Objections. On and after the Effective Date, only the Reorganized Debtor shall have authority to file objections, litigate to judgment, settle or withdraw objections to Disputed Claims. On and after the Effective Date, the Reorganized Debtor shall be entitled to compromise or settle any Disputed Claim without approval of the Bankruptcy Court.

        (c)     Service of Objections. Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder of the Claim if the Debtor effectuates service in any of the following manners: (a) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004, (b) to the extent counsel for the Holder of a Claim is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto, or (c) by first class mail, postage prepaid, on any counsel that has filed a notice of appearance in the Reorganization Case on behalf of the Holder of a Claim.

- 14 -

(d)     Fixing or Liquidation of Claims. Disputed Claims shall be fixed or liquidated in the Bankruptcy Court as core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(B) unless the Bankruptcy Court orders otherwise. If the fixing or liquidation of a contingent or unliquidated Claim would cause undue delay in the administration of the Reorganization Case, such Claim shall be estimated by the Bankruptcy Court for purposes of allowance and distribution. Upon receipt of a timely-filed Proof of Claim, the Debtor or other party in interest may file a request for estimation along with its objection to the Claim set forth therein. The determination of Claims in Estimation Hearings shall be binding for purposes of establishing the maximum amount of the Claim for purposes of allowance and distribution. Procedures for specific Estimation Hearings, including provisions for discovery, shall be set by the Bankruptcy Court giving due consideration to applicable Bankruptcy Rules and the need for prompt determination of the Disputed Claim.

6.6     Withholding of Taxes.  The Reorganized Debtor shall withhold from any assets and property distributed under the Plan any assets or property which must be withheld for foreign, federal, state or local taxes payable with respect thereto or payable by the Person entitled to such assets to the extent required by applicable law.

6.7     Unclaimed Property.  Any Cash, assets or other property to be distributed under the Plan that remains unclaimed or otherwise not deliverable to the Person or Governmental Unit entitled thereto as of the later of (a) one (1) year after the Confirmation Date or (b) one hundred twenty (120) calendar days after the distribution shall become vested in the Reorganized Debtor to be applied toward the funding of the Plan.  In such event, such Person's or Governmental Unit's Claim shall no longer be deemed to be Allowed, and such Person or Governmental Unit shall be deemed to have waived its rights to such payments or distributions under the Plan pursuant to Section 1143 of the Bankruptcy Code and shall have no further Claim in respect of such distribution and shall not participate in any further distributions under the Plan with respect to such Claim.

6.8     Non-Negotiated Checks.  If a Holder of an Allowed Claim fails to negotiate a check issued to such Holder pursuant to the Plan within one (1) year of the date such check was issued, then the amount of Cash attributable to such check shall be deemed to be unclaimed property in respect of such Holder's Allowed Claim and shall be vested in, and transferred to, the Reorganized Debtor to be applied toward the funding of the Plan.  In such event, such Holder's Claim shall no longer be deemed to be Allowed and such Holder shall be deemed to have waived its rights to such payments or distributions under the Plan pursuant to Section 1143 of the Bankruptcy Code and shall have no further Claim in respect of such distribution and shall not participate in any further distributions under the Plan with respect to such Claim.

**6.9     Exoneration and Reliance.  The Released Parties shall not be liable to any Holder of a Claim or Interest or other party with respect to any action, omission, forbearance from action, decision or exercise of discretion taken during the period from the Petition Date to the Effective Date in connection with: (a) the management or operation of the Debtor; (b) the implementation of any of the transactions provided for, or contemplated in, the Plan or the Plan Documents; or (c) the administration of the Plan or the assets and property to be distributed pursuant to the Plan and the Plan Documents, other than for willful misconduct or gross negligence.  The Debtor and the Reorganized Debtor may rely upon the opinions of counsel, certified public accountants and other experts or professionals employed by the Debtor and the Reorganized Debtor, respectively, and such reliance shall conclusively establish good faith and the absence of willful misconduct.  In any action, suit or proceeding by any Holder of a Claim or Interest or other party in interest contesting any action by, or non-action of, the Debtor and the Reorganized Debtor as not being in good faith, the reasonable attorneys' fees and costs of the prevailing party shall be paid by the losing party. The rights granted under this Article are cumulative with (and not restrictive of) any and all rights,**

**remedies, and benefits that Released Parties have or obtain pursuant to any provision of the Bankruptcy Code or other applicable law. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions of this Article shall not release or be deemed a release of any of the Causes of Action.**

6.10    Form of Payments.  Except where the Plan contemplates deferred payment or delivery of property or securities, payments to be made by the Disbursing Agent pursuant to the Plan shall be made in Cash or by check drawn on a domestic bank or by wire transfer from a domestic bank.

6.11    Further Authorizations.  The Debtor and the Reorganized Debtor, if and to the extent necessary, shall seek such Orders, judgments, injunctions and rulings that may be required to carry out further the intentions and purposes of, and give full effect to the provisions of, the Plan.

6.12    Plan Documents.  By the Plan Documents Filing Date, the Debtor shall file with the Bankruptcy Court unexecuted copies of the Plan Documents, together with all necessary exhibits or schedules thereto, as may be necessary or appropriate to effectuate the terms and conditions of the Plan. Any party in interest may review the Plan Documents on any Business Day during normal business hours (9:00 a.m. to 4:30 p.m. Eastern Standard Time) at the offices of Bush Ross, P.A., 1801 N. Highland Street, Tampa, Florida 33602.

6.13    Section 1146 Exemption.  Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any security or the making, delivery or recording of any instrument of transfer pursuant to, in implementation of or as contemplated by the Plan or any Plan Document, or the revesting, transfer or sale of any real or personal Property of, by or in the Debtors pursuant to, in implementation of, or as contemplated by the Plan or any Plan Document, or any transaction arising out of, contemplated by or in any way related to the foregoing, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall be, and hereby are, directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

6.14    Securities Exemption.  Except with respect to an entity that is an underwriter as defined in subsection (b) of Section 1145 of the Bankruptcy Code, Section 5 of the Securities Act of 1933 and any state or local law requiring registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security do not apply to the issuance of the promissory notes under the Plan or the Plan Documents pursuant to Section 1145 of the Bankruptcy Code.

6.15    Recordable Order.  The Confirmation Order shall be declared to be in recordable form and shall be accepted by any recording officer for filing and recording purposes without further or additional orders, certifications or other supporting documents.

6.16    Effectuating Documents and Further Transactions.  The executive officers of the Debtor shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents and take or direct such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

6.17    Corporate Action.  All matters provided for under the Plan and under the Plan Documents involving the organizational structure of the Debtor or the Reorganized Debtor or action to be taken by, or

- 16 -

required of the Debtor or the Reorganized Debtor, shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the members of any of such entities.

6.18    Extinguishment of Guarantees.  On the Effective Date, and in accordance with the terms of the Plan, all guarantees of collection, payment or performance made by the Debtor shall be discharged, released, extinguished and of no further force or effect.

6.19    Management of the Reorganized Debtor.  On and after the Effective Date the business and affairs of the Reorganized Debtor shall be managed by the same managers that existed on the Petition Date.  The Reorganized Debtor shall have full control and authority over the Property of the Estate of the Debtor, without the need for Bankruptcy Court approval pursuant to section 363 or 330 of the Bankruptcy Code, or any other provision of the Bankruptcy Code, or United States trustee control or oversight during a Chapter 11 case, including but not limited to policy making, day-to-day operations, financing, transactional, corporate governance, and any and all other corporate activity.

## ARTICLE 7

## EFFECTS OF PLAN CONFIRMATION

7.1    Discharge. Pursuant to Section 1141(d) of the Bankruptcy Code, Confirmation of the Plan discharges the Debtor from (1) all Claims (including, but not limited to, claims based upon any act or omission, transaction or other activity or security instrument or other agreement of any kind or nature occurring, arising or existing prior to entry of the Confirmation Order or arising from any pre-Confirmation conduct, act or omission of the Debtor) against, liabilities of (including, but not limited to, any liability of a kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code), Liens on, obligations of, and Interests in the Debtor or the assets and properties of the Debtor, whether known to, unknown or knowable by the Holder thereof and (2) all causes of action, whether known to, unknown or knowable by the Holder thereof, either directly or derivatively through the Debtor, against successors and assigns of the Debtor, based on the same subject matter as any Claim or Interest, in each case regardless of whether or not a Proof of Claim or Proof of Interest was filed, whether or not Allowed and whether or not the Holder of the Claim or Interest voted on or accepted the Plan.  Except for the obligations expressly imposed by the Plan, the distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, extinguishment and termination of all such Claims against, liabilities of, Liens on, obligations of and Interests in the Debtor or the assets and properties of the Debtor.  In addition, the Confirmation Order shall operate as a general adjudication and resolution with prejudice, as of the Effective Date, of all pending legal proceedings against the Debtor and its assets and properties, as well as any proceedings not yet instituted against the Debtor or its assets and properties, except as otherwise provided in the Plan.

As provided in Section 524 of the Bankruptcy Code, the discharge provided herein operates as an injunction against, among other things, the assertion of any Claim or Interest or the commencement of legal action or process against the Debtor or against the property of the Debtor.

Furthermore, but in no way limiting the generality of the foregoing discharge and injunction, except for the obligations expressly imposed by the Plan, any Person or Governmental Unit accepting any distribution pursuant to the Plan shall be presumed conclusively to have released the Debtor and successors and assigns of the Debtor, from any cause of action based on the same subject matter as the Claim or Interest on which the distribution is received.  This release shall be enforceable as a matter of contract against any Person or Governmental Unit that acquires any distribution pursuant to the Plan.

7.2    <u>General Injunction</u>. Pursuant to Sections 105, 1123, 1129 and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the Plan, as of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons or Entities that have held, currently hold or may hold a Claim, Debt, Liability or Interest that is discharged or terminated pursuant to the terms of the Plan are and shall be permanently enjoined and forever barred from taking any of the following actions on account of any such discharged or terminated Claims, Debts, Liabilities, or Interests, other than actions brought to enforce any rights or obligations under the Plan or the Plan Documents: (a) commencing or continuing in any manner any action or other proceeding against the Debtor and its Property; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor and its Property; (c) creating, perfecting or enforcing any Lien or encumbrance against the Debtor, and its Property; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order; or (f) interfering with or in any manner whatsoever disturbing the rights and remedies of the Debtor. The Debtor shall have the right to independently seek enforcement of this general injunction provision. This general injunction provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions of this Article shall not release or be deemed a release of any of the Causes of Action.

7.3    <u>Term of Injunctions and the Automatic Stay</u>. Unless otherwise provided in the Plan or a Final Order of the Bankruptcy Court, the injunctions described in Sections 7.1 and 7.2 herein shall remain in full force and effect following the Effective Date. All other injunctions or automatic stays provided for in the Reorganization Case pursuant to Section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

7.4    <u>No Liability for Tax Claims</u>. Unless a taxing authority has asserted a Claim against the Debtor before the bar date established therefor, no Claim of such authority shall be Allowed against the Debtor or the Reorganized Debtor for taxes, penalties or interest arising out of the failure, if any, of the Debtor to have filed any tax return, including, but not limited to, any income tax return or franchise tax return in any prior year or arising out of an audit of any return for a period before the Petition Date.

7.5    <u>Vesting</u>. Except as otherwise expressly provided in the Plan, on the Effective Date, the Reorganized Debtor shall be vested with all of the Assets and property of the Debtor, free and clear of all Claims, Liens, encumbrances, charges and other interests of Holders of Claims or Interests, and shall operate its business free of any restrictions imposed by the Bankruptcy Code or by the Bankruptcy Court.

7.6    <u>Disallowed Claims and Disallowed Interests</u>. On and after the Effective Date, the Debtor shall be fully and finally discharged of any liability or obligation on a disallowed Claim or a disallowed Interest, and any Order creating a disallowed Claim or a disallowed Interest which is not a Final Order as of the Effective Date solely because of a Person's or Governmental Unit's right to move for reconsideration of such Order pursuant to Section 502 of the Bankruptcy Code or Bankruptcy Rule 3008 shall nevertheless become and be deemed a Final Order on the Effective Date. The Confirmation Order, except as otherwise provided herein, shall constitute an Order: (a) disallowing all Claims and Interests to the extent such Claims and Interests are not allowable under any provision of Section 502 of the Bankruptcy Code, including, but not limited to, time-barred Claims and Interests, and Claims for unmatured interest; and (b) disallowing or subordinating, as the case may be, any Claims for penalties or punitive damages.

7.7    <u>Retention and Enforcement of Claims or Interests</u>. Pursuant to Section 1123(b)(4) of the Bankruptcy Code, the Reorganized Debtor shall acquire and have the exclusive right to enforce against

any Person or Governmental Unit any and all causes of action and rights of the Debtor that arose both before and after the Petition Date, including the rights and powers of a trustee and debtor in possession and all causes of action granted pursuant to and still existing under Sections 502, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code.

7.8     No Successor Liability.   Except as otherwise expressly provided in the Plan, the Reorganized Debtor does not, pursuant to the Plan or otherwise, assume, agree to perform, pay or indemnify creditors against or otherwise have any responsibilities for, any liabilities or obligations of the Debtor or its Affiliates, whether fixed, contingent or otherwise, known or unknown, relating to or arising out of the operations of or assets of the Debtor, whether arising prior to, on or after the Effective Date. The Reorganized Debtor is not, nor shall it be, a successor to the Debtor or its Affiliates by reason of any theory of law or equity, and they shall not have any successor or transferee liability of any kind or character, except that the Reorganized Debtor shall assume the obligations specified in the Plan and the Confirmation Order.

7.9     Regulatory or Enforcement Actions. Nothing in this Plan shall restrict any federal governmental or regulatory agency from pursuing any police or regulatory enforcement action against any party, but only to the extent not prohibited by the automatic stay of Section 362 of the Bankruptcy Code or discharged or enjoined pursuant to Section 524 or 1141(d) of the Bankruptcy Code. No federal governmental or regulatory agency may pursue any action or proceeding of any type to recover monetary claims, damages, or penalties against the Debtor for any act or omission occurring prior to the Effective Date.

## ARTICLE 8

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1     Assumption and Rejection of Executory Contracts and Unexpired Leases.

(a)     Rejection.   Any executory contracts or unexpired leases that (a) have not been assumed by the Debtor with the Bankruptcy Court's approval on or prior to the Confirmation Date, and (b) are not the subject of a pending motion to assume on the Confirmation Date, shall, as of the Confirmation Date (subject to the occurrence of the Effective Date), be deemed to have been rejected by the Debtor.  The Plan shall constitute a motion to reject such executory contracts and unexpired leases, and the Debtor shall have no liability thereunder except  as is specifically provided in the Plan. Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to the Plan.

(b)     Assumption.   Notwithstanding anything in Section 8.1(a) to the contrary, the Debtor will assume the executory contracts identified on Exhibit "B" to the Disclosure Statement with the cure amounts set forth thereon paid in accordance with Section 8.2 below.  In addition, the Debtor may seek to assume certain executory contracts and unexpired leases that will be identified in any motion to assume pending on the Confirmation Date.

(c)     Reservation.   Notwithstanding anything in Sections 8.1(a) and 8.1(b) to the contrary, this Section 8.1 shall not apply to any executory contract or unexpired lease that is treated otherwise under the Plan.

8.2     Cure.  At the election of the Debtor, any monetary defaults under any executory contract and unexpired lease to be assumed shall be satisfied pursuant to Section 365(b)(1) of the Bankruptcy

Code, in one of the following ways:  (a) by payment of the default amount in Cash on the Effective Date; (b) by payment of the default amount in equal monthly installments commencing on July 1, 2012 and continuing for six months without interest, prepayable at any time with no penalty or premium; or (c) on such other terms as agreed to by the parties to such executory contract or unexpired lease.  Any party to an executory contract that does file an objection to the Plan prior to the deadline for filing objections to the Plan established by order of the Bankruptcy Court shall be deemed to agree to the cure amount for such executory contract as reflected on Exhibit "B" to the Disclosure Statement.  In the event of a dispute regarding (i) the cure amount for any executory contract to be assumed under the Plan, (ii) the ability of the Debtor to provide adequate assurance of future performance under the contract or lease to be assumed, or (iii) any other matter pertaining to assumption, the cure payments required by Section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving assumption.

       8.3     <u>Claims under Rejected Executory Contracts and Unexpired Leases</u>.  The Bankruptcy Court shall determine the dollar amount, if any, of the Claim of any Person or Governmental Unit seeking damages by reason of the rejection of any executory contract or unexpired lease; provided, however, that such Person or Governmental Unit files a Proof of Claim with the Bankruptcy Court before thirty (30) calendar days following the Confirmation Date.  To the extent any such Claim is Allowed by the Bankruptcy Court by Final Order, such Claim shall become, and shall be treated for all purposes under the Plan as, an Allowed Unsecured Claim and the holder thereof shall receive distributions as a holder of an Allowed Claim in such Class or Classes pursuant to the Plan.  The Plan shall constitute notice to Persons and Governmental Units that may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the bar date for filing a Proof of Claim in connection therewith; provided, however, that the Debtor shall have no obligation to notify such Persons and Governmental Units that the Confirmation Date has occurred.

<b><u>ARTICLE 9</u></b>

<b>EFFECTUATION AND SUPERVISION OF THE PLAN</b>

       9.1     <u>Jurisdiction</u>.  Until the Reorganization Case is closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction that is permissible, including that necessary to ensure that the purposes and intent of the Plan are carried out and to hear and determine all Claims that could have been brought before the entry of the Confirmation Order.  Except as otherwise provided in the Plan, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against the Debtor and to adjudicate and enforce all causes of action that may exist on behalf of the Debtor.  Nothing contained herein shall prevent the Reorganized Debtor from taking such action as may be necessary to enforce or prosecute any cause of action that the Debtor have or may have and that may not have been enforced or prosecuted by the Debtor, which cause of action shall survive Confirmation of the Plan and shall not be affected thereby except as specifically provided herein.

       9.2     <u>General Retention</u>.  Following Confirmation of the Plan, the Bankruptcy Court shall also retain jurisdiction for the purposes of classifying any Claim, re-examining Claims that have been Allowed for purposes of voting and determining such objections as may be filed with the Bankruptcy Court with respect to any Claim.  The failure by the Debtor to object to or examine any Claim for the purposes of voting shall not be deemed a waiver of the right of the Debtor to object to or re-examine such Claim, in whole or in part.

       9.3     <u>Specific Purposes</u>.  In addition to the foregoing, the Bankruptcy Court shall retain jurisdiction for the following specific purposes after the Confirmation of the Plan:

       (a)     to modify the Plan after Confirmation, pursuant to the Bankruptcy Rules and the Bankruptcy Code;

       (b)     to correct any defect, cure any omission or reconcile any inconsistency in the Plan, the Plan Documents or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan, including the adjustment of the date(s) of performance under the Plan, the Plan Documents and any other documents related thereto in the event the Effective Date does not occur as provided herein, so that the intended effect of the Plan, the Plan Documents and such other documents may be substantially realized thereby;

       (c)     to assure the performance by the Disbursing Agent of its obligations to make distributions under the Plan and the Plan Documents;

       (d)     to enforce and interpret the terms and conditions of the Plan and the Plan Documents;

       (e)     to enter such Orders including, but not limited to, injunctions as are necessary to enforce the title, rights and powers of the Reorganized Debtor;

       (f)     to enforce and interpret the terms and conditions of the Plan Documents;

       (g)     to hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits and similar or related matters with respect to the Debtor or its Estate arising prior to the Effective Date or relating to the period of administration of the Reorganization Case;

       (h)     to hear and determine all applications for compensation of professionals and reimbursement of expenses under Sections 330, 331 or 503(b) of the Bankruptcy Code;

       (i)     to hear and determine any causes of action arising during the period from the Petition Date through the Effective Date, or in any way related to the Plan or the transactions contemplated hereby, against the Debtor, the Reorganized Debtor or their respective officers, directors, stockholders, members, attorneys, financial advisors, representatives and agents;

       (j)     to determine any and all motions pending on Confirmation for the rejection, assumption or assignment of executory contracts or unexpired leases and the allowance of any Claim resulting therefrom;

       (k)     to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

       (l)     to consider and act on the compromise and settlement of any Claim against or Interest in the Debtor or its Estate;

       (m)     to determine all questions and disputes regarding title to the assets of the Debtor or its Estate;

       (n)     to enter such Orders as are necessary to implement and enforce the injunction described in Section 7.1 herein;

       (o)     to enter such Orders as are necessary to implement and enforce any other Orders entered in the Reorganization Case;

(p)     to enter an order concluding and terminating the Reorganization Case; and

(q)     to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code.

9.4     Closing of the Reorganization Case.  In addition to the retention of jurisdiction set forth in Articles 9.1, 9.2 and 9.3, the Bankruptcy Court shall retain jurisdiction of the Reorganization Case to enter an order reopening the Reorganization Case after it has been closed.

## ARTICLE 10

## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS

10.1     Conditions to Confirmation.  Confirmation of the Plan shall not occur unless each of the following conditions has been satisfied or has been waived in a writing executed by the Debtor.  These confirmation conditions are as follows:

(a)     Disclosure Statement.  The Bankruptcy Court shall have approved the Disclosure Statement in a Final Order.

(b)     Confirmation Order.  The Bankruptcy Court shall have made such findings and determinations regarding the Plan as shall enable the entry of the Confirmation Order, and any other Order entered in conjunction therewith, in form and substance acceptable to the Debtor.

10.2     Conditions to Effectiveness.  Notwithstanding any other provision of the Plan or the Confirmation Order, the Effective Date of the Plan shall not occur unless and until each of the following conditions has been satisfied or has been waived in a writing executed by the Debtor:

(a)     Final Confirmation Order.  The Confirmation Order (and such related Orders) shall have become a Final Order.

(b)     Corporate Documents.  The Plan Documents and the other applicable corporate documents necessary or appropriate to the implementation of the Plan shall have been executed, delivered and, where applicable, filed with the appropriate governmental authorities.

(c)     United States Trustee's Fees.  The fees of the United States Trustee for the Middle District of Florida then owing by the Debtor shall have been paid in full.

10.3     Waiver.  Notwithstanding any other provision of the Plan or the Confirmation Order, the Plan shall not be binding on any party in interest unless and until each of the foregoing conditions to Confirmation and the Effective Date has occurred or has been waived in a writing executed by the Debtor. The conditions precedent set forth in Article 10.1 and Article 10.2 of the Plan may be waived, in whole or in part, by the Debtor, without notice to the Bankruptcy Court or a hearing, and without notice to Creditors and parties in interest.

## ARTICLE 11

## ACCEPTANCE OR REJECTION OF PLAN

11.1     Each Impaired Class Entitled to Vote Separately.  Each Impaired Class of Claims or Interests shall be entitled to vote separately to accept or reject the Plan.

11.2    <u>Class Acceptance Requirement</u>.  Consistent with Section 1126(c) of the Bankruptcy Code, and except as provided in Section 1126(e) of the Bankruptcy Code, a Class of Claims shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan. If a Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for purposes of determining the number of Claims in such Class voting on the Plan. Pursuant to Section 1126(d) of the Bankruptcy Code, the Impaired Class of Interests shall have accepted the Plan if the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Interests actually voting in such Class have voted to accept the Plan.

11.3    <u>Confirmation Over Objections</u>.  If any Impaired Class fails to accept the Plan by the requisite majority, and the Plan is not revoked or withdrawn, the Debtor requests that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code, on the basis that the Plan is fair and equitable, does not discriminate unfairly with respect to any nonaccepting Impaired Class and provides to the Holders of Claims in each Impaired Class property of a value, as of the Effective Date, equal to the Allowed Amount of such Claims, or that any Holder of a Claim or Interest that is junior to such Claims shall not receive or retain any property on account of such junior Claim or Interest.  The Debtor further requests, and shall be allowed, to modify the terms of the Plan to effect a "cramdown" on such dissenting Class by (a) restructuring the treatment of any Class on terms consistent with Section 1129(b)(2)(B) of the Bankruptcy Code, or (b) deleting distributions to all Classes at or below the level of the objecting Class, or reallocating such distributions, until such Impaired senior Classes are paid in accordance with the absolute priority rule of Section 1129(b) of the Bankruptcy Code. The Debtor may make such modifications or amendments to the Plan and such modifications or amendments shall be filed with the Bankruptcy Court and served on all parties in interest entitled to receive notice prior to the Confirmation Hearing.  No such modifications shall require any resolicitation of acceptances as to the Plan by any Class of Claims or Interests unless the Bankruptcy Court shall require otherwise.  Notwithstanding any provision of the Plan to the contrary, the Debtor reserves any and all rights it may have to challenge the validity, perfection, priority, scope and extent of any Liens in respect to any Claims and the amount of any Claims, the Holders of which have not accepted the Plan.

# ARTICLE 12

## MISCELLANEOUS PROVISIONS

12.1    <u>Revocation of Plan</u>.  The Debtor reserves the right to revoke and withdraw the Plan before the entry of the Confirmation Order.  If the Debtor revokes or withdraws the Plan, or if Confirmation of the Plan does not occur, then, with respect to the Debtor, the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, or any other Person or to prejudice in any manner the rights of the Debtor, or such Person in any further proceedings involving the Debtor.

12.2    <u>Headings</u>.  Headings are utilized in the Plan for convenience and reference only and shall not constitute a part of the Plan for any other purpose.

12.3    <u>Due Authorization by Holders of Claims</u>.  Each and every Holder of a Claim who elects to participate in the distributions provided for herein warrants that such Holder is authorized to accept, in consideration of such Holder's Claim against the Debtor, the distributions provided for in the Plan and that there are no outstanding commitments, agreements or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed, or obligations undertaken, by such Holder under the Plan.

12.4    Payment on Distribution Dates.  Whenever any payment or distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall, instead, be made, without interest, on the next Business Day thereafter.

12.5    Modification of Payment Terms.  The Debtor reserves the right to modify the treatment of any Allowed Claim, as provided in Section 1123(a)(4) of the Bankruptcy Code, at any time after the Effective Date upon the consent of the Person or Governmental Unit whose Allowed Claim treatment is being modified.

12.6    Entire Agreement.  The Plan, including all exhibits and annexes hereto, sets forth the entire agreement and undertakings relating to the subject matter herein and supersedes all prior discussions and documents.  No Person or Governmental Unit shall be bound by any terms, conditions, definitions, warranties, understandings or representations with respect to the subject matter herein, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

12.7    Administrative Claims Bar Date.  Unless otherwise ordered by the Bankruptcy Court, the Confirmation Order shall operate to set a bar date for Administrative Claims, which bar date shall be thirty (30) days after the Effective Date.  Claimants holding Administrative Claims against the Debtor not paid on the Effective Date may submit a Request for Payment of Administrative Expense on or before such bar date.  The notice of Confirmation to be delivered pursuant to Bankruptcy Rules 2002 and 3020(c) shall set forth such date and constitute notice of the Administrative Claims bar date.  The Reorganized Debtor and any other party-in-interest shall have sixty (60) days after the Administrative Claims bar date to review and object to such Claims before a hearing for determination of such Administrative Claims is held by the Bankruptcy Court.

12.8    Confirmation Order.  In addition to the requirements set forth in the Plan, the Confirmation Order shall also ratify all transactions consistent with the provisions of the Plan and the Plan Documents effected by the Debtor during the period commencing on the Petition Date and ending on the Effective Date.

12.9    Governing Law.  Except to the extent that federal law (including, but not limited to, the Bankruptcy Code and the Bankruptcy Rules) is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law thereof.

12.10    Severability. Should the Bankruptcy Court determine, prior to the Confirmation Date, that any provision in the Plan is either illegal on its face or illegal as applied to any Claim or Interest, such provision shall be unenforceable either as to all Holders of Claims or Interests or as to the Holder of such Claim or Interest as to which the provision is illegal, respectively.  Such a determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

12.11    Time.  In computing any period of time prescribed or allowed by the Plan, the day of the act, event or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is not a Business Day or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the clerk's office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days.  When the period of time prescribed or allowed is less than eight (8) days, intermediate days that are not Business Days shall be excluded in the computation.

12.12    No Interest.  Except as expressly stated in the Plan or otherwise Allowed by Final Order of the Bankruptcy Court, no interest, penalty or late charge arising after the Petition Date is to be Allowed on any Claim.

12.13    No Attorneys' Fees.  No attorneys' fees shall be paid with respect to any Claim except as specified herein or as Allowed by a Final Order of the Bankruptcy Court.

12.14    Addresses for Distributions to Holders of Allowed Claims.  Unless otherwise provided in the Plan, the Plan Documents or a Final Order of the Bankruptcy Court, distributions to be made under the Plan to Holders of Allowed Claims shall be made by first class United States mail, postage prepaid to: (a) the latest mailing address set forth in a Proof of Claim timely filed with the Bankruptcy Court by or on behalf of such Holders or (b) if no such Proof of Claim has been timely filed, the mailing address set forth in the Schedules.  The Debtor, the Reorganized Debtor or the Disbursing Agent shall not be required to make any other effort to locate or ascertain the address of the Holder of any Claim.

12.15    Consent to Jurisdiction.  Upon default under the Plan, the Reorganized Debtor consents to the jurisdiction of the unit of the United States District Court for the Middle District of Florida, Tampa Division, known as the Bankruptcy Court for that District, or any successor thereto, and agree that it shall be the preferred forum for all proceedings relating to such default.

12.16    Setoffs.  Subject to the limitations provided in Section 553 of the Bankruptcy Code, the Debtor may, but shall not be required to, setoff against any Claim and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, Claims of any nature whatsoever the Debtor may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such Claim that the Debtor may have against such Holder.

12.17    Successors and Assigns.   The rights, duties and obligations of any Person or Governmental Unit named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person or Governmental Unit.

12.18    Reservation.  The Plan provides for the resolution, settlement and compromise of Claims against and Interests in the Debtor. Nothing herein shall be construed to be an admission of any fact or otherwise binding upon the Debtor in any manner prior to the Effective Date. If the Plan is not confirmed by the Bankruptcy Court for any reason, the rights of all parties in interest in the Reorganization Case shall be reserved in full.  Furthermore, any concession reflected herein is made for purposes of the Plan only, and if the Plan does not become effective, no party in interest in the Reorganization Case shall be bound or deemed prejudiced by any such concession.

12.19    Confirmation Order and Plan Control To the extent the Confirmation Order or the Plan is inconsistent with the Disclosure Statement or any agreement entered into between the Debtor and any third party, unless otherwise expressly provided in the Plan or the Confirmation Order, the Plan controls over the Disclosure Statement and any such agreement, and the Confirmation Order (and any other Final Orders of the Bankruptcy Court) shall be construed together and consistent with the terms of the Plan.

## ARTICLE 13

## MODIFICATION OF PLAN

13.1    Modification of Plan.  The Debtor may propose amendments to, or modifications of, the Plan under Section 1127 of the Bankruptcy Code at any time prior to the Confirmation Date.  After the

Confirmation Date, the Debtor may remedy any defects or omissions or reconcile any inconsistencies in the Plan or the Confirmation Order or any other Order entered for the purpose of implementing the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan so long as the interests of the Holders of Allowed Claims are not materially and adversely affected.

## ARTICLE 14

### NOTICES

14.1    Notices.  All notices, requests, elections or demands in connection with the Plan shall be in writing and shall be mailed by registered or certified mail, return receipt requested, to:

| If to the Debtor: | With mandatory copies to: |
|---|---|
| Tree House, LLC | Bush Ross, P.A. |
| 116B Polo Park East Blvd | Post Office Box 3913 |
| Davenport, Florida 33897 | Tampa, Florida 33601-3913 |
| Attn: Garrett Kenny | Attn:  Adam Lawton Alpert, Esq. |

Dated:    Tampa, Florida
        May 3, 2012

**TREE HOUSE, LLC**

By:_____/s/ Garrett Kenny_____
        Garrett Kenny, President of Manager

1145142.2

## EXHIBIT B

### ASSUMED EXECUTORY CONTRACTS AND PROPOSED CURE AMOUNTS

**Contract**                                    **Counter Party**                                    **Cure Amount**

*[TO BE PROVIDED PRIOR TO SOLICITATION]*

**EXHIBIT C**

**LIQUIDATION ANALYSIS FOR
TREE HOUSE, LLC**

| Assets | Liquidation Values |
|---|---|
| Grenelefe Units | $550,000.00 [1] |
| Cash | 1,705.22 |
| Accounts Receivable | 1,068.58 [2] |
| **TOTAL ASSETS** | **$552,773.80** |

| Liabilities | Amount |
|---|---|
| Secured Claims | $830,000.00 [3] |
| U.S. Trustee Fees | 700.00 [4] |
| Administrative Claims | 35,000.00 [5] |
| Unsecured Claims | 598,288.29 |
| **TOTAL LIABILITIES** | **$1,463,988.29** |

| | |
|---|---|
| **DIVIDEND TO SECURED CLAIMS** | **66.60%** |
| **DIVIDEND TO ADMIN. AND PRIORITY CLAIMS** | **0.0%** |
| **DIVIDEND TO UNSECURED CLAIMS** | **0.0%** |

[1] For purposes of this liquidation analysis, the Debtor assumes a liquidation of the Units with minimal marketing efforts.

[2] The accounts receivable are listed at approximately 33.33% of book value as of the Petition Date.

[3] The secured claims are calculated as of the Petition Date and include the secured claims of CNL Bank, the Polk County Tax Collector, and holders of issued tax certificates for past due real estate taxes.

[4] The estimated U.S. Trustee fees include the amount of fees for the Debtor in accordance with 28 U.S.C. § 1930.

[5] The administrative claims include estimates of the Debtor's expenses for professionals.

**<u>EXHIBIT D</u>**

**SUMMARY OF FINANCIAL PROJECTIONS OF REORGANIZED DEBTOR**

## Tree House, LLC
## Ch. 11 Plan Pro Forma
## 5/1/12-4/30/13

| | 31-May-12 | 30-Jun-12 | 31-Jul-12 | 31-Aug-12 | 30-Sep-12 | 31-Oct-12 | 30-Nov-12 | 31-Dec-12 | 31-Jan-13 | 28-Feb-13 | 31-Mar-13 | 30-Apr-13 | YEAR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | | |
| Application Fee | 50.00 | 0.00 | 0.00 | 0.00 | 150.00 | 100.00 | 150.00 | 100.00 | 250.00 | 0.00 | 0.00 | 0.00 | 800.00 |
| Rent | 7,025.00 | 7,525.00 | 7,525.00 | 6,225.00 | 6,675.00 | 5,995.00 | 6,605.00 | 5,100.00 | 7,525.00 | 7,525.00 | 7,525.00 | 7,525.00 | 82,775.00 |
| **Total Income** | 7,075.00 | 7,575.00 | 7,525.00 | 6,225.00 | 6,825.00 | 6,095.00 | 6,755.00 | 5,200.00 | 7,775.00 | 7,525.00 | 7,525.00 | 7,525.00 | 83,575.00 |
| **Costs** | | | | | | | | | | | | | |
| Bank Service Charges | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 120.00 |
| Cleaning/Janitorial | 60.00 | 0.00 | 0.00 | 180.00 | 120.00 | 0.00 | 120.00 | 300.00 | 300.00 | 0.00 | 0.00 | 0.00 | 960.00 |
| Homeowners Dues | 4,269.67 | 4,269.67 | 4,269.67 | 4,269.67 | 4,269.67 | 4,269.67 | 4,269.67 | 4,269.67 | 4,269.67 | 4,269.67 | 4,269.67 | 4,269.67 | 51,236.00 |
| Liability Insurance | 597.69 | 597.69 | 597.69 | 0.00 | 0.00 | 620.00 | 620.00 | 620.00 | 620.00 | 620.00 | 620.00 | 620.00 | 6,133.07 |
| Licenses and Permits | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 140.00 | 0.00 | 140.00 |
| Leasing Fees | 0.00 | 470.31 | 0.00 | 0.00 | 1,430.36 | 1,144.62 | 1,415.36 | 927.27 | 2,051.56 | 0.00 | 0.00 | 0.00 | 7,509.48 |
| Other Maintenance | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 3,600.00 |
| Property Tax | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 11,963.66 | 0.00 | 11,963.66 |
| Utilities | 80.00 | 60.00 | 60.00 | 120.00 | 100.00 | 120.00 | 100.00 | 160.00 | 60.00 | 60.00 | 60.00 | 60.00 | 1,040.00 |
| **Total Costs** | 5,317.36 | 5,707.67 | 5,237.36 | 4,879.67 | 6,230.02 | 6,464.29 | 6,835.02 | 6,586.94 | 7,611.23 | 5,259.67 | 17,363.33 | 5,259.67 | 82,702.21 |
| **Surplus** | 1,757.64 | 1,867.33 | 2,287.64 | 1,345.33 | 594.98 | -369.29 | -80.02 | -1,386.94 | 163.77 | 2,265.33 | -9,838.33 | 2,265.33 | 872.79 |
| Plan Payments CNL | 4,676.72 | 4,676.72 | 4,676.72 | 4,676.72 | 4,676.72 | 4,676.72 | 4,676.72 | 4,676.72 | 4,676.72 | 4,676.72 | 4,676.72 | 4,676.72 | 56,120.64 |
| Plan Payments Unsecured | | | | | | | | | | | 4,000.00 | | 4,000.00 |
| Plan Payments Taxes | | | | | | | | | | | | 8,212.29 | 8,212.29 |
| **Total Plan Payments** | 4,676.72 | 4,676.72 | 4,676.72 | 4,676.72 | 4,676.72 | 4,676.72 | 4,676.72 | 4,676.72 | 4,676.72 | 4,676.72 | 8,676.72 | 12,889.02 | 68,332.94 |
| **Support Required from** | | | | | | | | | | | | | |
| Feltrim Developments US Inc | 2,919.08 | 2,809.39 | 2,389.08 | 3,331.39 | 4,081.74 | 5,046.01 | 4,756.74 | 6,063.66 | 4,512.95 | 2,411.39 | 18,515.05 | 10,623.68 | 67,460.15 |

## Tree House, LLC
## Ch. 11 Plan Pro Forma
## YE 4/30/13 - YE 4/30/17

| | YE 4/30/13 | YE 4/30/14 | YE 4/30/15 | YE 4/30/16 | YE 4/30/17 |
|---|---|---|---|---|---|
| **Income** | | | | | |
| Application Fee | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 |
| Rent | 82,775.00 | 82,775.00 | 84,844.38 | 84,844.38 | 86,965.48 |
| **Total Income** | 83,575.00 | 83,575.00 | 85,644.38 | 85,644.38 | 87,765.48 |
| **Costs** | | | | | |
| Bank Service Charges | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 |
| Cleaning/Janitorial | 960.00 | 960.00 | 979.20 | 998.78 | 1,018.76 |
| Homeowners Dues | 51,236.00 | 51,236.00 | 51,236.00 | 51,236.00 | 51,236.00 |
| Liability Insurance | 6,133.07 | 6,133.07 | 6,255.73 | 6,380.85 | 6,508.46 |
| Licenses and Permits | 140.00 | 140.00 | 140.00 | 140.00 | 140.00 |
| Leasing Fees | 7,509.48 | 7,449.75 | 7,635.99 | 7,635.99 | 7,826.89 |
| Other Maintenance | 3,600.00 | 3,600.00 | 3,672.00 | 3,745.44 | 3,820.35 |
| Property Tax | 11,963.66 | 11,963.66 | 11,963.66 | 11,963.66 | 11,963.66 |
| Utilities | 1,040.00 | 1,040.00 | 1,060.80 | 1,082.02 | 1,103.66 |
| **Total Costs** | 82,702.21 | 82,642.48 | 83,063.39 | 83,302.74 | 83,737.78 |
| **Surplus** | 872.79 | 932.52 | 2,580.99 | 2,341.64 | 4,027.70 |
| Plan Payments CNL | 56,120.64 | 56,120.64 | 56,120.64 | 56,120.64 | 56,120.64 |
| Plan Payments Unsecured | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 |
| Plan Payments Taxes | 8,212.29 | 8,212.29 | 8,212.29 | 8,212.29 | 8,212.29 |
| **Total Plan Payments** | 68,332.94 | 68,332.94 | 68,332.94 | 68,332.94 | 68,332.94 |
| **Support Required from Feltrim Developments US Inc** | 67,460.15 | 67,400.42 | 65,751.95 | 65,991.30 | 64,305.24 |